(95 South. 601)

No. 23620.

PARKER v. KREBER.

(Jan. 27, 1923. Rehearing Denied Feb. 26, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Landlord and tenant** ⟜169(6)—**Evidence held to show injured person standing on gallery floor and leaning on railing of balustrade which broke.**

Evidence in action for injuries *held* to show that tenant's wife was standing on floor of gallery and leaning on and over balustrade or railing when it broke ·and injured her, and was not, as claimed, standing on the lower rail of the balustrade.

2. **Landlord and tenant** ⟜168(1)—**Negligence of tenant's wife in leaning against gallery railing knowing it was dilapidated held to prevent recovery.**

Where tenant's wife knew gallery railing was dilapidated and that carpenter was there for the purpose of repairing the gallery, her negligence in leaning over and against the railing prevents a recovery for injuries sustained when it broke.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Action by Mrs. Sarah Parker, widow of Henry Conners, against Charles Kreber. From a judgment for plaintiff, defendant appeals. Judgment annulled and set aside, and plaintiff's demand rejected.

Beer & Robbert, of New Orleans (Mark M. Boatner, of New Orleans, of counsel), for appellant.

Oscar Schreiber, of New Orleans, for appellee.

OVERTON, J. Henry Conners, now deceased, leased a part of a house in the city of New Orleans from defendant. The part leased was in the second story, and consisted of two rooms and a gallery. Conners and his wife had been living in the house some 10 months, when one day in March, 1916, the latter, who is the plaintiff herein, walked on the gallery of the second story, and leaned over the railing to talk to Ernest Mayer, a carpenter. The railing gave way, and plaintiff fell to the ground.

Having been injured by the fall, plaintiff instituted this suit to recover damages of defendant. Her contention is that the accident was not due to her fault, but entirely to the fault of defendant, who, she alleges, failed in his duty to keep the railing in proper repair.

It appears that defendant realized that the gallery, including the railing, was in need of repair, and procured the services of his carpenter, Ernest Mayer, who lived on the first floor of the house, to do the work. Mayer was in the yard, making preparations to begin, when the accident occurred. Defendant was also there, evidently for the purpose of giving Mayer directions as to what work to do.

The railing, or balustrade, against which plaintiff was leaning, consisted of two boards, five or six inches wide, and seven-eighths of an inch thick, one constituting the top rail and the other the bottom. These two rails were originally morticed into or nailed to the house proper and to a gallery post, thus forming that panel of the railing between the body of the house and the post; but at the time of the accident, in our view, one end of the lower rail had become detached. Originally, there were ten spindles, about four inches apart, connecting the two rails, and forming the balustrade at that end of the gallery. According to the evidence of defendant and of Mayer, half of the spindles were

missing at the time of the accident. According to the evidence of plaintiff, they were all missing.

[1] The evidence is very conflicting as to the particular manner in which the accident occurred. According to plaintiff's version, when she walked out of her room to the railing on the gallery to converse with Mayer, who was in the yard, she leaned on the railing, and during the course of the conversation that ensued, which was of very short duration, she laughed, and the railing gave way, and she and the railing fell to the ground. According to the version of defendant, plaintiff stood on the bottom rail, while talking to Mayer, and that rail gave way. He testifies that when it gave way, the top rail still remained in place, but the five remaining spindles in it dropped out, and plaintiff fell through the space between the top rail and the gallery. Mayer testifies that plaintiff was standing on the lower rail, but according to his version, as we understand his evidence, when the top rail gave way, it still remained attached to the spindles, and by them to the top rail. He further testifies that the balustrade swung out from the gallery, and plaintiff fell through the space thus caused, to the ground. Both defendant and Mayer testify that they warned plaintiff of her danger, but she denies that such a warning was given.

Plaintiff is approximately 5 feet 5 inches tall. The top rail was approximately 3½ feet from the floor. As Mayer was near the house, it may have been necessary for plaintiff to lean over the rail somewhat to talk to him, yet, in our view, there was no occasion for her to stand on the lower rail. Had she done so, considering her height and that of the railing, it would have placed her in an uncomfortable position. Moreover, had she been standing on the lower rail, as testified to by defendant, and had that rail and the spindles alone given way, we are of the opin-

ion that she would have fallen on the gallery on her feet, and not on the ground, for the gallery extended about six inches beyond the railing. The upper rail, had it remained in position, would have kept her from falling to the ground. We are not of the opinion that a balustrade constructed, as this one was, with a board five or six inches wide for the top rail, and secured at each end, would have swung out, as described by Mayer, had the lower rail alone become detached. The upper rail was not such a one as would have been likely to have revolved, and especially to such an extent as to make Mayer's version of the accident possible. Even had it revolved, we think that, had plaintiff fallen, the effect of the motion would have been to have thrown her backwards on the gallery, and not between the lower rail and the gallery. There is no contention that she fell over the top rail. We therefore conclude that plaintiff is correct when she testifies that she was standing on the floor, and leaning on the top rail when it broke, and that she fell with it to the ground, with the exception that we find that she was leaning over the railing to some extent. That she was so leaning is indicated by the fact that Mayer was very near the house when the accident occurred, which caused her to lean over somewhat in talking to him, and by the further fact that when the railing broke she was thrown forward into the yard, without an opportunity to regain her balance.

[2] While we think that plaintiff is correct in her version, to the extent stated, yet we think that her own evidence precludes her from obtaining judgment. She knew that Mayer was there for the purpose of repairing the gallery. She knew that the railing was in a dilapidated and defective condition. She testifies that, when she and her husband moved into the house some 10 months before the accident, she, in order to secure privacy, tacked a piece of matting to the upper and

lower rail; that, at that time, there were no spindles in the railing; that one end of the lower rail was loose, and dropped a little lower than the other end. She further testifies that the other end of the latter rail was secured only by small nails. This condition, we gather from the evidence, including her own, she knew still existed at the time of the accident.

While plaintiff may be mistaken in testifying that all of the spindles were missing, yet with the above knowledge in her possession, she must have known that it was unsafe to lean against or over the railing, and her negligence, in having done so, prevents her from recovering judgment.

Having found that plaintiff was guilty of negligence, the case of Ciaccio v. Carbajal, 142 La. 125, 76 South. 583, cited by plaintiff, has no application.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and that plaintiff's demand be rejected, at her costs in both courts.