## VIOLA v. CONVERY

(November 26, 1928.   Opinion and Decree.)
(February 4, 1929.   Rehearing Refused.)
(January 26, 1929.   Decree Supreme Court,
Writ of Certiorari and Review Denied.)

Geo. Piazza, of New Orleans, attorney for plaintiff, appellee.

McCloskey and Benedict, of New Orleans, attorneys for defendant, appellant.

JONES, J.   In this proceeding plaintiff sues her husband's landlord for personal injuries in the sum of $10,160.00, alleged to have been caused on January 31, 1920, at 1122 Tchoupitoulas Street, by a 15-foot fall from the back gallery of the tenement to the brick pavement below.

She alleges that the rail enclosing the gallery broke and precipitated her to the pavement, while she was hanging up the family washing, and as a result of the accident, she was kept in the Charity Hospital three days and remained in the Hotel Dieu about two and a half months; that she still limped badly and feared permanent injury.   She itemizes her damages as follows:

"Doctor's bill, Fifty Dollars _____ $      50.00
"Hotel Dieu fees, One Hundred
    Ten Dollars _____      110.00
"Physical suffering and mental
    anguish, Five Thousand Dollars   5,000.00
"For future suffering and pain,
    and impairment of the physical
    functions of the parts injured,   as
    well as inability to perform her
    household duties, the fact of
    being a cripple for the rest of
    her life; loss of full movement
    of her limb, and future mental
    anguish and fear by reason of
    same, the sum of Five Thou-
    sand Dollars _____   5,000.00

"Total, Ten Thousand One
    Hundred and Sixty Dol-
    lars _____ _____ $10,160.00"

Defendants answered, admitting the accident, but pleading contributory negligence, evidenced by the alleged fact that plaintiff's husband had agreed to repair the gallery for the sum of $5.00, to be

deducted from his rent. The case was tried by a jury and resulted in a verdict of $660.00, itemized as follows:

"It is ordered, adjudged and decreed, that there be judgment herein in favor of plaintiff, Mrs. Carmela Viola, wife of John Salsiccia, and against the defendant, Sarah F. Convery for two hundred and twenty dollars, against the defendant, John T. Convery for two hundred and twenty dollars and against the defendant, Charles F. Convery for two hundred and twenty dollars with legal interest from judicial demand, against each of the three said defendants, and for the costs of this proceeding, one-third to each of the said defendants."

From this decision, defendants have appealed to this Court and plaintiff has answered the appeal, asking that the judgment be increased.

The sole issue before us is contributory negligence. The record shows, (1) That the plaintiff's husband, a laborer, orally leased from defendants a small, cheap, second-story tenement, consisting of two rooms and a kitchen, which opened on a small, narrow back gallery. This gallery, which was about ten feet long and one and one-half feet wide, was protected by a banister about four feet high, consisting of solid rails on the top and bottom, with upright rungs a few inches apart, in between the two rails; (2) Plaintiff, who had a baby about 14 months old, which was just beginning to crawl around, was naturally anxious to protect it from all dangerous openings; (3) she was hanging up clothes on the back gallery when the top rail of the banister broke and threw her to the pavement.

Mrs. Convery, one of the defendants, testified that, when plaintiff and her husband were inspecting the premises, just before the lease, the husband stated that the railing was weak and he could not move in unless it was fixed; whereupon she said: "I cannot get anyone with such short notice to repair it," and he said: "I will do it."

She further testified that two or three of the rungs were missing then; that he also complained that certain panes of glass were broken and would have to be repaired and that she authorized him to make the repairs and deduct the cost from rent. (Notes. She does not testify, as averred in the answer, that he had agreed to repair railing for $5.00).

J. S. Convery, son of defendant, admitted that a deduction was made from the rent for the panes of glass, but no deduction was ever made for any railing.

Both Mr. and Mrs. Convery testified that plaintiff erected a barrier at the rear end of the gallery, consisting of three boards nailed across the gallery about four feet high, and that they had seen this barrier repeatedly, both before and immediately after the accident, and that the husband had admitted that he was satisfied with that protection.

Plaintiff testified that she heard the discussion about repairing the window panes, but she denied hearing any discussion with reference to repairing the banister, and she further denied that any barrier was ever placed across the gallery.

The husband admits that he spoke to Mrs. Convery with reference to the railing, but he says he referred only to the missing rungs, as he feared that his baby would fall through. He positively denied that he ever agreed to repair the banister or to deduct the bill from the rent. In this he is confirmed by the fact that no deduction was ever made for repairs to railing, although one was made for repairs to window glasses.

Mrs. Charles Strechler, a neighbor, whose back gallery almost joins that of plaintiff, and who testified that she saw plaintiff walk on the gallery to hang up the clothes, touch the rail, and fall, swears that no barrier was ever built across plaintiff's back gallery, but that a wooden tomato-can box had been placed there to prevent the baby from going on the gallery. She is positive that she saw the box repeatedly both before and after the accident.

Defendant argues that plaintiff was guilty of contributory negligence because she walked on the gallery knowing it was rotten. As this is an important point, we quote plaintiff's entire testimony thereon:

Mr. Benedict to plaintiff on cross-examination:

"Q. And you went out on this gallery that you knew was rotten?
"A. No, sir; if I knew it was rotten I never go there."

Redirect examination:

Mr. Teissier:
"Q. Was the floor of that back gallery rotten?
"A. Sir?
"Q. Was the flooring on that back gallery rotten?
"A. Yes, it was rotten.
"Q. What did you or your husband complain to Mrs. Convery about that gallery before you went in the house; what did you see was the matter with the gallery, do you remember?
"A. I don't remember exactly.
"Q. Was it the gallery that fell down or the balustrade?

Mr. Benedict:
Object to leading the witness.
Mr. Teissier, (Continuing):
"Q. I will change the form of the question. What fell down?
"A. The banisters.
"Q. Did the gallery fall down?
"A. No, sir.
"Q. Were there any boards at the bottom of this railing?

"A. No boards."

While these statements appear conflicting when taken by themselves, they are clarified to some extent when considered along with the entire testimony of plaintiff, who did not seem to understand English thoroughly, and frequently asked over simple questions, and once, on direct examination, asked her lawyer, who had inquired about her use of the yard below, "What do you mean, 'yard'?"

As the sole charge of negligence is based on the breaking of the rail, and as there is no evidence that the gallery floor ever did break, we do not think that defendant's argument is sound, even if her statement as to the rotten condition of the gallery floor stood alone, but as she makes confusing statements on this point, we must interpret that statement so that it will harmonize with her entire testimony, namely, that it was the railing which was rotten.

A careful consideration of the entire record convinces us that plaintiff's contention is not only sustained by a preponderance of the evidence, but it is the more probable of the two. Plaintiff's husband would hardly have restricted her narrow quarters by building a permanent barrier across the gallery free of charge, when he could have been paid for his labor and material if he had done the same amount of work on repairing the missing rungs.

Defendant, while admitting that the trend of prior decision was against his contention, insists that the facts here are exactly similar to those in the case of Parker vs. Kleber, 153 La. 191, 95 So. 601, and that the decision in that case should control.

In the Parker case the lower rail of the banister was hanging loose at one end and

at least half of the rungs were missing. On the morning of the accident, defendant's carpenter had come into the yard below to repair the railing and plaintiff leaned over or against the top rail of the banister to talk to the carpenter. While so doing, the top rail broke and she was thrown to the ground. The Supreme Court decided in favor of defendant because plaintiff leaned over or against the railing, though she knew it was defective. .

There are essential differences between that case and the present. Here the banister was not in such a bad condition, as neither top nor bottom rail was broken and only two or three rungs were missing. Here plaintiff did not knowingly lean over or against the top rail, but accidentally fell against it while hanging up the clothes. She did not know that the railing was rotten.

The facts in this case are analogous to those in Boutte vs. N. O. Terminal Co., 139 La. 945, 72 So. 513, where the court, in the course of its reasons for judgment, uses the following language:

"To assume that the lessee, in this case, knew that the balcony was so rotten that it could not withstand her weight would be to assume that she committed suicide. All that could be assumed in that respect would be that she knew or ought to have known that the balcony was unsafe. The evidence, however, does not justify our concluding that the danger was so apparent as to do away with the provisions of Article 2695 of the Civil Code, whereby the lessor was bound to guarantee the lessee against all vices and defects in the leased premises and to indemnify her for any loss resulting therefrom."

On this point, see also the following decisions:

Lasyone vs. Zenoria Lumber Co., 163 La. 185, 111 So. 670.

Breen vs. Walters, 150 La. 578, 91 So. 50.

Schoppel vs. Daly, 112 La. 201, 36 So. 322.

Ciaccia vs. Carbajal, 142 La. 125, 76 So. 583.

Klein vs. Young, 163 La. 59, 111 So. 495.

Wise vs. Lavigne, 138 La. 218, 70 So. 103.

For above reasons the judgment is affirmed as to the liability of defendants.

As to quantum, we think the amount allowed too low. Plaintiff suffered a serious and painful injury. Plaintiff, who was a strong woman of twenty-seven, had done all her house work prior to the accident. The head of the thigh-bone was driven into the acetabulum, or cavity in which it fits, causing great pain for three weeks. She remained in Charity Hospital three days and in Hotel Dieu for two and one-half months. She also suffered one year with one leg shorter than the other. She had to stay in bed for some time after she left the hospital and continued to suffer. She had to pay the doctor's bill of $100.00 and the hospital bill of $60.00. We think the amount allowed for pain and suffering should be increased by $500.00.

While the case was pending in this Court, John T. Convery, one of the defendants, died, leaving the following four heirs:

Miss Sarah F. Convery,
Reverend Charles F. Convery,
Mrs. Mary A. Convery,
Miss Maria Convery Buckley.

Therefore the judgment against John T. Convery must be divided into four parts.

It is therefore ordered adjudged and decreed that there now be judgment herein in favor of plaintiff, Mrs. Carmela Viola, wife of John Salsiccia, and against the

defendant, Miss Sarah F. Convery, for Four Hundred Eighty-three and 33/100 Dollars ($483.33); against the defendant, Reverend Charles F. Convery, for Four Hundred Eighty-three and 33/100 Dollars ($483.33); against the defendant, Mrs. Mary A. Convery, for Ninety-six and 67/100 Dollars ($96.67), with legal interest from judicial demand, against each of the four said defendants, and for the costs of this proceeding, one-fourth to each of the said defendants.