Damages for the death of her husband, Willie Redd, are sought by Mary Redd in this suit which she instituted against Bernard Sokoloski.
It is well stated in the brief of plaintiff's counsel that: "In her petition she alleged that for a number of years prior to the death of her husband, he had been renting the premises at 1660 Clay Street, Shreveport, Louisiana, from the defendant Bernard Sokoloski. Further, that the boards comprising the back porch of said premises were rotten and decayed and defective, and had been so for a number of years, and that the defendant Bernard Sokoloski knew of their rotten, decayed, and defective condition, and failed to remedy same, and that such defects constituted a vice and defect in the premises. That on the night of July 22, 1939, as was his custom, petitioner's late husband went on the said back porch, going to a spigot on the far end thereof to wash his false teeth, and that while on said porch one of the planks therein, due to its rotten, decayed, and defective condition, broke, and as a result of said breaking, Willie Redd was thrown to the ground, injuring himself very severely, and that from said injuries he died on July 25, 1939."
The petition was met with exceptions of no cause and no right of action. These were overruled. Defendant later filed a plea of estoppel which was referred to the merits of the case.
In his answer defendant admitted the renting of the mentioned premises to decedent, but denied all other allegations of the petition. Further answering, he re-urged the plea of estoppel, and, in the alternative, pleaded contributory negligence on decedent's part.
Trial was regularly held, resulting in a judgment rejecting the demands of plaintiff. From it she appealed.
Foundation for the action are the provisions of Article2695 of the Louisiana Civil Code, reading: "The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
It is admitted in this court by defendant that Willie Redd, who was defendant's tenant of the premises at 1660 Clay Street, Shreveport, Louisiana, came to his death by virtue of a fall caused by the defective condition of the flooring on the rear porch of the dwelling house.
As the brief of defense counsel recites, the suit is defended on two grounds: "First, that Willie Redd, the deceased, and Bernard Sokoloski, the defendant, entered into an agreement whereby Willie Redd agreed that he would not hold the *Page 268 
defendant for any vices or defects in the building and waived his rights as granted by the articles of the Code just mentioned, and, secondly, that the deceased was grossly contributorily negligent, barring any recovery by him had he survived, or by his widow in case of his death."
The plea of contributory negligence is meritorious, we think; and in view of this conclusion, consideration of the other stated ground of defense is unnecessary.
It is shown by the evidence that decedent and his wife lived in defendant's house for thirteen or fourteen consecutive years prior to the occurrence of the accident. For the last five years of that period the flooring of the rear porch thereof, in the vicinity of an existing water hydrant, had been in a defective, decayed and rotted condition; and it grew worse as time elapsed.
Photographs of the porch, which are in the record and were made from a position above the flooring, reveal that the heavy joist originally supporting the outer edges of the floor boards under and near the hydrant had completely rotted away; and those boards, possessing jagged edges and being shortened several inches by reason of decay, had no foundation at their ends and none for a distance of several feet therefrom.
The evidence further discloses that about two years before the death of decedent, one of those rotted planks broke at a point a few feet from its outer edge when the two year old grandson of plaintiff stepped thereon. This broken piece of flooring was never replaced. Furthermore, it adjoined the board that failed to support decedent, a man weighing in excess of 200 pounds, and which broke a similar distance from the end.
One of plaintiff's witnesses gives the following pertinent testimony regarding the porch:
"Q. You have known that porch to be rotten and decayed in there since 1937? A. Yes, sir, it was rotten in 1937.
"Q. It was rotten in 1937? A. It could have been before that. That is when I paid attention to it because I went there to get water and I noticed the porch.
"Q. You walked carefully? A. No, I would not get upon it.
"Q. You would not get upon it at all? A. No."
The described defective condition was well known to decedent. He was at home almost every night while domiciled there and frequently used the porch and water hydrant; and undoubtedly he knew of the accident sustained by his grandson. Moreover, complaints relative to such porch, together with requests for repairs, were filed with defendant on several occasions by him and his wife; but the lessor refused to remedy the defects until certain past-due rentals were paid.
On the night that decedent experienced his fall, the porch was well illuminated by an electric light in the adjoining kitchen and also by a gas flare at a nearby oil well. As he approached the hydrant, for the purpose of washing his false teeth, the rotted floor plank that caused his fall, together with its unsupported end, was plainly visible.
Counsel for the litigants have directed our attention to seventeen cases decided by appellate courts of this state, each of which involves a question somewhat similar to the one under consideration. The opinions in all of them, as well as in several others not cited, have been studied by us. From our study of such authorities, we understand the rule to be that where a tenant has knowledge of the generally defective condition of a portion of the rented premises, but it reasonably appears that he might safely use it with the exercise of care, his use in such manner does not constitute contributory negligence that would bar his recovery in an action for damages resulting from the defects. If, however, he was aware of the defect causing the injury and it was such as to indicate to a reasonable-minded person that use of the defective portion was apparently and imminently dangerous, recovery is not permitted.
The second part of the stated rule, we think, is applicable to the facts of the instant case. As before shown, the generally defective condition of the floor was well known to decedent. Additionally, various factors combined to signal to him a warning of the imminently dangerous nature of the part thereof that was responsible for his fall. These included his weight of over 200 pounds; the unsupported, jagged and decayed planks that were easily observable; and the existence of a hole in the porch, created, as decedent knew, by reason of an adjoining board's *Page 269 
failure to withstand the presence of a small child.
Therefore, for the above reasons, the judgment is affirmed.