Plaintiff was a domestic servant in the employ of Mr. and Mrs. Marx Pastel, who were tenants in the upper apartment of a "duplex" apartment building owned by Edward J. DeVerges. She alleges that on January 5th, 1942, she sustained serious physical injuries which caused her to suffer a miscarriage when she fell as a result of stepping upon a defective tread of a stairway which led from the apartment to the ground. She charges that Pastel, her employer, is liable to her for the damages she sustained for the reason that he, as her employer, failed to furnish to her a safe place in which to carry on the work for which she was employed. She charges also that the accident was caused by the negligence of the owner of the premises, DeVerges, in that he failed to maintain his building in a safe and useable condition but she does not make the said DeVerges a party defendant and does not seek to obtain a judgment against him.
She does allege, however, that the Travelers Indemnity Company had issued to DeVerges a policy of public liability insurance in which the said company had agreed to protect and indemnify him against loss resulting from any defect in the premises and she prays that the said company be made a party defendant and that she obtain judgment against it as well as against Pastel. She prays for judgment for $10,000.
It appears that the policy of insurance was issued not by the Travelers Indemnity Company but by the Travelers Insurance Company, but this latter Company makes no point of this error and concedes that such a policy had been issued by it and that because of such policy the liability, if any, is in it.
Plaintiff alleges also that she was treated for her injuries at the Charity Hospital at New Orleans, and she prays that a copy *Page 199 
of her petition be served upon that institution.
The Travelers Insurance Company answered admitting the issuance of the policy but denying that plaintiff had fallen as alleged, and alleging that the plaintiff had been warned that the steps were defective and should not be used, and charging that if plaintiff fell because of the defective condition of the steps, her fall resulted from her own contributory negligence in deliberately attempting to make use of a portion of the premises which obviously was defective and which she had been warned not tomake use of.
Marx Pastel filed answer in all respects similar to that of the insurance company. He averred that if he should be held liable, the Travelers Insurance Company should also be held liable to plaintiff.
It now appears that in the lease between DeVerges, as lessor, and Pastel, as lessee, there are stipulations under which Pastel, according to his pleadings, "has assumed certain responsibilities for the condition of the premises." And it is because of these stipulations relieving DeVerges of those obligations that he was not made a party defendant by plaintiff. While Pastel, in his answer, does not seek to have DeVerges held liable, he avers that the lease stipulations to which we have referred may not be availed of by the insurance company since that company is not a party to the lease contract.
Although the Charity Hospital of New Orleans did not intervene, the record contains a stipulation to the effect that the plaintiff, for such injuries as she sustained, wherever she may have sustained them, was treated at the Charity Hospital, and that therefore if there is recovery at all, there should be judgment in favor of the Charity Hospital for $26.50, the cost of the services rendered to plaintiff.
There was judgment in favor of both defendants, dismissing plaintiff's suit, and she has appealed.
It will be noted that the claim of plaintiff against Pastel is based on the relationship of employer and employee, and on the charge that the employer failed to furnish a safe place for the performance of the work, whereas the claim against the insurance company is based on the theory that the owner of the building, DeVerges, failed to maintain it in proper repair and is therefore liable because of the obligation placed on the owner of a building by Articles 670 and 2322 of our Civil Code.
[1, 2] There are several different relationships out of which there may arise a claim for damages based on defective and dangerous premises. Two of such relationships we have already mentioned. A third is that which exists between lessor and lessee: the obligations of the lessor being set forth in Articles 2693-2695 of our Code. Although the obligations between the parties in these different situations are controlled by different articles of our Code, in all such situations the contributory negligence of the injured party may be set up as a defense. The only serious question arises when we come to determine whether under any given set of facts the injured party who used the defective premises can be said to have been guilty of contributory negligence in so using them. We find in Redd v. Sokoloski, La. App., 2 So.2d 266, 268, a well stated rule for determining whether the person who makes use of defective premises should be held guilty of contributory negligence:
"Counsel for the litigants have directed our attention to seventeen cases decided by appellate courts of this state, each of which involves a question somewhat similar to the one under consideration. The opinions in all of them, as well as in several others not cited, have been studied by us. From our study of such authorities, we understand the rule to be that where a tenant has knowledge of the generally defective condition of a portion of the rented premises, but it reasonably appears that he might safely use it with the exercise of care, his use in such manner does not constitute contributory negligence that would bar his recovery in an action for damages resulting from the defects. If, however, he was aware of the defect causing the injury and it was such as to indicate to a reasonable-minded person that use of the defective portion was apparently and imminently dangerous, recovery is not permitted."
While that case involved an injury sustained by a tenant and the suit is against the lessor, the rule set forth applies here whether we consider the claim against Pastel, the employer, or against the insurer of the owner of the building. See also Parker v. Kreber, 153 La. 191, 95 So. 601, and Fontenot v. Angel, La. App., 2 So.2d 475.
As to either defendant it can be said that the plaintiff would not have been considered *Page 200 
guilty of contributory negligence in using the steps if it appeared that plaintiff, though having knowledge of the generally defective condition of the steps, could reasonably have believed that they might be safely used with the exercise of care. On the other hand, the use of the steps was certainly contributory negligence if the defect was such as to indicate "to a reasonable-minded person that use of the defective portion was apparently and imminently dangerous."
Here it appears that whatever may have been the appearance of the defect, plaintiff was expressly warned that under no conditions was she to use the steps until the necessary repairs could be made. The evidence that such warning was given to her is overwhelming. Plaintiff, herself, admits that on the day before she claims that she fell, Mrs. Pastel, wife of one of the defendants, said: "Olevia, they say the step broke out there." She attempts to weaken the effect of this admission that she had been told that the step was defective by saying that on the next day, when she reported for work, she told Mrs. Maire, Mr. Pastel's mother-in-law, that she did not see any broken step and that Mrs. Maire replied: "I think Mr. Marx (Pastel) fixed it yesterday."
Pastel says that when he noticed the broken step he said to Mrs. Pastel: "That step downstairs is off and when Olevia comes to work tomorrow morning be sure to tell her not to use that back step." He says too that at dinner on the day before the alleged occurrence, he said to plaintiff, herself: "Now Miss Hilda has already told you and I am telling you again, don't use that back step unless we tell you it has been fixed."
Mrs. Pastel says that when plaintiff reported for work at the front door, as she always did, she, herself, "went to the kitchen for that express purpose" and told her "not to use the step, the back steps at all until we would tell her * * *."
Mrs. Maire says that when plaintiff reported for work, Mrs. Pastel "rushed to tell Olevia not to use the steps" and she also says that she heard Mrs. Pastel say to plaintiff: "now don't use the steps before you are told to do so." She says too that when plaintiff later told her that she had fallen, she, Mrs. Maire, said: "You should not have used them before Mrs. Pastel told you to do so."
That it was not necessary that the back steps be used all of the witnesses except plaintiff testified. It was customary for plaintiff to use the front entrance for general ingress and egress. They say that until the steps could be repaired they expected her to use the front entrance for all purposes.
While we feel that plaintiff's deliberate use of the defective steps, in spite of the warning not to do so, deprived her of her right to recover, we may say too that while it is very certain that plaintiff did suffer a miscarriage there is certain evidence which throws doubt upon her allegation that she sustained the fall on the steps of the building as she alleges that she did. She says that she fell during the afternoon, and yet it is shown that on the evening of that day she prepared and served dinner as usual and made no mention at all of her fall or of having sustained any injury. Her first complaint came on the following day.
[3] The judge a quo was correct in holding that plaintiff should not recover and in saying: "I think she had sufficient notice and warning not to use the back steps * * *".
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 233