Nenie Cade, the pliantiff and appellee, was the lessee under a month to month verbal lease of the premises 2230 Clio Street, which were owned by Joe Tafaro. On August 31, 1946, at about 9:30 o'clock, a.m., plaintiff was injured when she was struck by a plank which fell from the ceiling of the porch, and she brings this suit for damages amounting to $4,617.75 for personal injuries and the loss of certain earnings, against Tafaro, the landlord, and his public liability insurance carrier, London Lancashire Insurance Company, Ltd. *Page 73 
The corporate name of the insurance carrier was incorrectly stated in the petition — its correct name is London 
Lancashire Indemnity Company — and by agreement of counsel the suit was abandoned as to London Lancashire Insurance Company, and the corporation, under its correct name, was never made a party defendant in the suit.
Joe Tafaro answered the suit denying the alleged injuries and averring that plaintiff knew of the defective condition of the ceiling and was guilty of contributory negligence, such as to bar a recovery, by reason of her continued occupancy of the premises. He further claims that he knew nothing of the defect in the ceiling and had no opportunity of learning thereof, because vicious dogs kept by plaintiff prevented his entry into the premises for the purpose of making an inspection.
An intervention was filed by the Board of Administrators of Charity Hospital of Louisiana in New Orleans, in which it is alleged that hospitalization and medical treatment to the amount of $111.75 had been furnished plaintiff as a result of her injuries, and a judgment for that amount against both plaintiff and defendants was prayed for.
This appeal has been taken by Joe Tafaro from a judgment of the lower court in favor of plaintiff for $1,000, and in favor of the intervenor, and against him, for $111.75. Plaintiff answered the appeal, praying for an increase in the award to $2,500.
There is no doubt that plaintiff suffered injuries on the date alleged. At about 9:30 o'clock in the morning she opened the blinds leading to the upstairs front porch of the leased premises, and stepped upon the porch. Just as she did so, one end of a plank in the ceiling over the porch became detached, and the loose end swung downward and struck her on the head and about the shoulders. Besides the plaintiff's testimony regarding the occurrence, one Eddie Glenn, who was walking along the sidewalk on the far side of Clio Street, opposite the leased premises, saw the board swing down from the ceiling and strike plaintiff's head. Glenn stated that he thereupon crossed the street to plaintiff's house and attempted to enter it to reach the upper porch, so that he could assist her. He found the front gate fastened and was never able to get into the house. However, he testified that a short time thereafter a Charity Hospital ambulance arrived and plaintiff was placed into it and taken away. That the board did break loose from the ceiling is admitted by Joe Tafaro. He testified that after being notified of the accident he visited the premises and found a board from the ceiling hanging down by one end; that it was a plank about 7/8 of an inch by 6 inches, and 12 feet long; that the height of the ceiling was 10 feet, 1 inch from the porch floor. He pulled the board entirely from the ceiling and laid it on the porch.
The difficulty in this case emanates from the unsatisfactory method employed by plaintiff in the endeavor made to prove the nature and extent of her injuries. She relied to a great degree upon her own testimony to prove that which should have been shown by medical experts. Plaintiff testified that she remained in the Charity Hospital for sixteen days. In this she is supported by the intervention of the administrators of the hospital, which asserts that she was hospitalized for sixteen days. However, counsel for plaintiff did not see fit to summon as witnesses the five doctors who plaintiff says treated her in the hospital, nor did he offer in evidence a certified copy of the hospital record, which under the provisions of Act 90 of 1938 would have constituted prima facie proof of its contents.
Taking the record as it is, we find that plaintiff was knocked unconscious by the blow from the board. At one point in the testimony she claims that she remained unconscious for fifteen minutes, and in another statement she testified that she did not "come to" until after reaching the hospital. She remained in the hospital for sixteen days, but what treatment was accorded her, or what the findings of the hospital physicians were, we are at a loss to know. Plaintiff, a Negress 37 years of age, described the treatment as follows:
"Q. What type of treatment did you receive at Charity Hospital? A. Well, they had an iron on my neck and had my bed *Page 74 
hoisted up. They had my head in a brace and iron on the back of my neck and my bed hoisted high.
"Q. How long did you remain under that type of treatment? A. Two weeks and a half."
We also find many discrepancies and inconsistencies in her testimony. In the petition she claims an item of $306 for the loss of earnings. She testified that she was employed by the Central Laundry at a wage of $18 per week, and that the injuries disabled her to the extent that she could not work after the accident and lost wages to the amount claimed, calculated up to the date of the filing of the suit. On cross-examination, however, she admitted that her employment with the laundry ceased in January 1946, long before the accident on the porch.
Her petition also alleges that she had notified her landlord several times about the defective condition of the porch ceiling, but on the witness stand she testified that she did not know of the dangerous condition of the ceiling, and that her only complaint concerned the bad condition of the floor and bannister of the porch.
Plaintiff also attempted to exaggerate the circumstances surrounding the accident. To Dr. Kisner she made the statement that "the roof of a porch caved in," and she told Dr. Maurer that the "front porch caved in on her." The testimony of these physicians will be analyzed later.
Not long after being discharged from the hospital, we gather, plaintiff consulted her attorney regarding the institution of a suit against the landlord for damages. Evidently plaintiff's attorney made demand on behalf of his client, for counsel for both parties admitted that plaintiff was examined by two physicians, Dr. Dan Dysart Baker, the physician for defendant Tafaro's insurer, and by Dr. Wendell Kisner, a physician acting at the instance of the attorney for plaintiff. It was agreed between counsel for each party that the insurance carrier would furnish plaintiff's counsel with a copy of Dr. Baker's report, and that the claim adjuster for the insurer would be given a copy of Dr. Kisner's report.
[1] The two physicians made their examinations, and copies of the reports were interchanged as agreed. However, another unusual circumstance occurred — on the trial of the case below, plaintiff failed to produce Dr. Kisner, who made his examination of her at the request of her counsel, as a witness. At the trial defendant's counsel, when Dr. Kisner did not appear as a witness, offered in evidence a copy of Dr. Kisner's report. Plaintiff strenuously objected to the admission of the report as evidence, upon the ground that it was hearsay. The trial judge admitted the report, and considering the agreement of the parties to interchange the reports of the examining physicians, we think that the court's ruling was correct.
The disputed report, which is dated November 6, 1946, contains among others, the following statements:
"The patient is a well developed fairly well nourished colored female. Her blood pressure is 160/90. Head: a perforated tympanic membrane of the right car is present; no evidence of injury of the head can be found. Neck: there is some stiffness and limited range of motion of the neck in all directions. The patient complains of tenderness and pain over the spinous processes of the fifth and sixth cervical vertebrae. Thoraz: the patient complains of tenderness over the left scapula on palpation. There is a normal range of motion of the left shoulder and left upper extremity. No abnormal reflexes are present.
* * * * * *
"Diagnosis: This patient has undoubtedly suffered a severe sprain of the neck and contusion of the left shoulder. There is no evidence of fracture of the cervical spine or shoulder. There is a perforation of the right eardrum but I am not able to say how long this has been present.
* * * * * *
"P. S. This patient still has a disability as a result of her injury but this should clear up eventually. There is a tendency on the part of the patient to exaggerate her symptoms."
Dr. Baker testified that he made his examination on September 23, 1946 (23 days *Page 75 
after the accident), and that most of plaintiff's injuries were on the right side of the head; that there was no swelling, discoloration or marked tenderness. He stated that plaintiff complained of pain, but that there was no limitation of movement of the head, or of the upper or lower extremities.
Dr. E.H. Maurer, who made one examination of plaintiff, and that six months after the accident, appeared as her witness and testified that she complained of headache, dizziness, vertigo, and pains in the neck and right arm, which were purely subjective. He interpreted X-rays, which had been taken of plaintiff by a Dr. Ane, as showing a ruptured intervertebral disc, and stated that this condition caused neurological symptoms. His opinion was that the condition could have been caused by a blow on the head, but admitted on cross-examination that plaintiff had an arthritic condition which had probably existed for some time.
[2, 3] As we have stated, this whole record is unsatisfactory, and plaintiff's testimony, to say the least, is highly suspicious. No explanation was made of the failure to call the hospital physicians as witnesses, or to produce the hospital records. Nor was Dr. Kisner, who had been employed by plaintiff's attorney, called upon to give testimony as to his findings and opinion. But though we regard the claims and statements of Nenie Cade with suspicion, in view of her self-contradictions and exaggerations, and her failure to produce evidence which appears to have been readily accessible, the fact still remains that she was injured on the porch on the date alleged, and was immediately afterward removed to the hospital, where she remained, according to her testimony which is corroborated by the allegations of the hospital's intervention, for sixteen days. It also appears from the testimony of the two physicians who did appear as witnesses, and from the report of Dr. Kisner, that plaintiff did show symptoms of having been injured. The record does not reflect what the diagnoses of the hospital physicians were, nor are we informed as to the nature of the treatments accorded plaintiff in the hospital. We believe that testimony from these physicians, and the reports of the hospital, would have been most helpful in arriving at a determination of the exact nature of plaintiff's injuries, and the duration and extent thereof, and particularly whether they are permanent as plaintiff claims. In view of this, our opinion is that the lower court, who saw and heard the testimony, and had the opportunity of observing plaintiff, did substantial justice in awarding her $1,000, and there is no warrant for increasing the award as prayed for in the answer to the appeal. Much discretion is vested in the trial court in assessing damages in a case such as this.
[4] Joe Tafaro, the landlord, is liable to plaintiff for her injuries due to the defectiveness of the leased premises. C.C. Arts. 2692-2695.
[5] We do not find that plaintiff was guilty of contributory negligence. Her testimony is to the effect that she did not believe that the ceiling was in such bad condition that it would collapse, and under that circumstance she, as a tenant, cannot be held guilty of contributory negligence in continuing to live in the leased premises. Mitchell v. Travelers' Indemnity Co. et al., La. App., 21 So.2d 198; Estes v. Ætna Casualty Surety Co., La. App., 157 So. 395; White v. Juge, 176 La. 1045, 147 So. 72; Labat v. Gaerthner Realty Co., Inc., La. App., 146 So. 69; Viola v. Convery, 10 La. App. 85, 122 So. 90; Divas v. Noto, 17 La. App. 177, 134 So. 275.
There is absolutely no merit in Tafaro's defense that his fear of the vicious dogs prevented his inspecting the leased premises. He admitted on cross-examination that he had never requested plaintiff's permission to enter the premises.
The allowance made to the Administrators of Charity Hospital is not at issue — on page 7 of the transcript there appears an agreement stipulated by counsel that the hospital bill is due.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 76