64 So.2d 805 (1953)
MONTZ
v.
LOUISIANA COCA-COLA BOTTLING CO., Limited.
No. 20039.
Court of Appeal of Louisiana, Orleans.
May 4, 1953.
*806 Irving Novick, New Orleans, for appellee.
May & Carrere and Herman J. Schulze, New Orleans, for appellant.
REGAN, Judge.
Plaintiff, Mrs. Nelida D. Montz, instituted this suit against the defendant, Louisiana Coca-Cola Bottling Company, Ltd., endeavoring to recover the sum of $1,500 for injuries incurred as a result of having consumed particles of glass contained in a bottle of coca-cola which she purchased on January 7, 1952, at 8:00 P. M., from a vending machine owned, operated by and located in the H. G. Hill Grocery Store in 718 S. Carrollton Avenue.
Defendant answered and generally denied the allegations of plaintiff's petition and pleaded as a special defense thereto that its plant is equipped with the most modern, hygienic and scientific machinery developed for the purpose of bottling this beverage. Defendant insists that it is a physical impossibility for any foreign substance to find its way into the beverage or the bottles and, if the plaintiff was injured as alleged, then defendant points out that the particles of glass were not in the bottled beverage when it was removed from its plant or when it was delivered to the dealer and, therefore, this occurred only after the bottled beverage had passed into the possession of third persons and was then beyond the control of defendant.
From a judgment in favor of plaintiff in the sum of $500 defendant prosecutes this appeal. Plaintiff has answered the appeal requesting an increase in the amount of the judgment to the sum initially prayed for.
The record reveals that plaintiff, accompanied by her husband, Anthony R. Montz, entered the H. G. Hill Store in 718 S. Carrollton Avenue, where they cashed a check and plaintiff walked to a coca-cola vending machine, placed a nickel therein and obtained a bottle of coca-cola which she opened and began drinking. After partaking the first swallow thereof she was conscious of icelike particles in her mouth which she believed to be frozen coca-cola; that upon taking the second swallow, she moved the particles about on her tongue for a moment and experienced a pricking sensation from the slivers of glass, which cut her tongue and mouth and then caused sharp pains in her throat and stomach; after a moment of nervous meditation, she spat out the second mouthful of the beverage and placed her finger in her mouth and retrieved the slivers of glass, whereupon she "yelled Robert. * * * Look. I got glass in this bottle of coke." Her husband, who was nearby in the vegetable department, came quickly to her assistance. In a few moments Haspel L. Lumpkin, the manager of the store, arrived upon the scene and observed plaintiff with the coca-cola bottle in her hand. She informed him that there was glass in the bottle and she opened her mouth and showed him her tongue and he agreed that there was evidence of glass thereon together with a small spot of blood emanating from her tongue.
Lumpkin, the manager of the store, two employees thereof, Miss Martha Fernandez and Mrs. Marguerite Foret, and plaintiff's husband appeared as witnesses, identified the bottle and confirmed both the occurrence of the incident and plaintiff's testimony in all of its essential aspects.
On behalf of defendant Shelby McManus testified that it sold the beverage to the Hill Store but that the vending machine located therein was owned and operated by the store. Eldon J. Wright, defendant's Assistant Superintendent, testified as to the abundance of caution exercised in bottling the beverage and the sanitary conditions which prevail in its plant.
The bottle of coca-cola was introduced in evidence by the plaintiff and an examination thereof in the court, a qua, and by the members of this court, revealed that the perimeter of the lip of the bottle was undamaged and that the glass contained therein did not emanate from this source.
According to a chemical analysis made by Shilstone Testing Laboratory the contents of the bottle contained particles of glass.
The foregoing facts reflect that the only evidence offered by defendant is to the effect that its plant is equipped with modern machinery and, in view of the sanitary methods employed in bottling the beverage, there is only a remote possibility that the glass could have entered the bottle. Thus only a question of fact was presented *807 to the trial judge. He accepted the testimony of plaintiff and her witnesses as genuine. Our careful examination of the record reveals that he was correct in his factual conclusions.
In LeBlanc v. Louisiana Coca-Cola Bottling Company, Ltd., 221 La. 919, 60 So.2d 873, 874, the Supreme Court was of the opinion that where the purchaser of a soft beverage, in a capped bottle, in apparent good condition, proves that the beverage contained unwholesome matter, and that he sustained injury from its consumption, he establishes a prima facie case for the assessment of damages against the bottler. The court said:
"It is to be borne in mind in these cases that the defendant company is engaged in the business of distributing its beverages to the public in sealed containers or capped bottles and that, by the very nature of its enterprise, it represents, we think, by advertisements extolling the quality of its product, that it is fit for human consumption and free from deleterious matter. And, while there is not a direct contract to this effect between the consuming public and the manufacturer (as it distributes to retailers or middlemen who in turn sell to the consumer), it is fair to imply that, since the manufacturer, in marketing its products in capped bottles, intends them to reach the consumer in the same condition in which they leave the factory, a warranty of wholesomeness exists between it and the consumer. Therefore, it is difficult to discern why a plaintiff, suffering illness as the result of consuming deleterious matter contained in a bottled beverage, should shoulder the burden of establishing a negative fact by producing the middleman, or others if need be, to show that no one handling the bottle after it left the defendant's plant removed the cap and permitted foreign substances to enter its contents. Properly, since proof of tampering by others would provide an avenue of escape from liability, it would seem to be a matter of defense."
In this case the manager and two employees of Hill's appeared as witnesses. Thus defendant was afforded the opportunity of using, if it could, the testimony of the "retailer or middleman" to provide an avenue of escape from liability. However, these witnesses only confirmed the testimony of plaintiff, i. e. that the beverage contained particles of glass, the bottle had not been tampered with and that she sustained some injury from its ingestion.
With respect to quantum there is no medical testimony contained in the record indicating the extent of the injuries suffered by plaintiff. She testified that after the accident her mouth was full of blood, whereas, Lumpkin, the manager of the Hill Store, testified that there was a speck of blood on her tongue the size of a pinhead. Plaintiff visited Dr. Nix, who advised her that she should merely eat "a loaf of bread" and if she continued to suffer any ill effects to return to see him. She further stated that she was forced to absent herself for two days from her employment and that she continued to manifest the ill effects of her injuries up to the date of the trial. Plaintiff also visited Charity Hospital, where one of the physicians in attendance sprayed her throat, made x-rays and prescribed some medication. Dr. Nix did not testify nor were the Charity Hospital Records introduced in evidence.
In the absence of medical evidence, we have on other occasions relied on plaintiff's testimony alone to establish the gravity or permanence of the injuries incurred, however in the instant case we were impressed with the inadequacy of plaintiff's testimony in this respect. Cade v. Tafaro, La.App., 34 So.2d 72.
The record, in the final analysis, indicates that while plaintiff may have been emotionally disturbed as a result of the incident which transpired on January 7, 1952, we fail to find where she suffered any injuries which would warrant an award in excess of $300.
For the reasons assigned the judgment appealed from is amended by reducing the amount thereof from $500 to $300 and, as thus amended, it is affirmed.
Amended and affirmed.
JANVIER, J., absent; takes no part.