304 So.2d 72 (1974)
J. B. NELSON, Jr., et ux., Plaintiffs-Appellants,
v.
Ola Caulfield Hutchison PARKHURST et al., Defendants-Appellees.
No. 9912.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
Rehearing Denied December 16, 1974.
Writ Refused February 7, 1975.
Paul H. Due, Baton Rouge, for plaintiffs-appellants.
Wm. H. Brown and John Dale Powers and Paul Frederickson, Baton Rouge, for defendants-appellees.
Before SARTAIN, J., and BAILES and LaHAYE, JJ. Pro Tem.
LaHAYE, Judge Pro Tem.
This is an action for personal injuries sustained by plaintiff, Mrs. Patricia Ann Nelson, as a result of a shock from a defective electric stove. This stove was in a house owned by the defendants and leased by the plaintiffs from a rental agency acting pursuant to a contract with the defendants.
The trial court denied recovery and plaintiffs perfected this appeal. For reasons hereinafter stated, we find that the result reached by the trial court is correct, and we affirm.
The questions to be resolved are (1) whether the lease contract contained provisions sufficient to preclude recovery under LSA R.S. 9:3221, and (2) the contributory negligence and/or assumption of risk of defendants.
LSA R.S. 9:3221 reads:
"The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time." (Emphasis added)
With respect to maintaining the premises, the following lease contract provisions are pertinent:
"The lessee assumes the responsibility of keeping the premises in a reasonably *73 good condition and will do nothing to increase insurance, taxes or other costs without first obtaining written permission of the lessor and immediately paying this increased cost on demand of lessor. The lessee agrees at the end of the lease to return the property in the same condition as when first rented less normal wear and tear. The lessee agrees to allow the lessor to inspect the property periodically.
The lessor agrees to maintain the roof and keep the building sound structurally. He agrees further to maintain the plumbing in a sanitary and workable condition. However, it is specifically understood that the lessee obligates himself to keep the plumbing free from obstruction or stoppage caused by his own negligence or imprudent usage. He also agrees to cut the water off if there is any danger whatsoever of freezing and if the pipes should freeze because of this neglect, he agrees to immediately inform the lessor and repair damages at his own expense, or to reimburse owner for repairs made by him.
The lessee agrees to make no unauthorized repairs or additions to the premises and binds himself not to mutilate the interior and exterior walls and woodwork by driving nails, screws, etc., in it for any purpose without first obtaining consent from the lessor, or his or her agent and then having the work done in an expert manner by a qualified tradesman."
The district court, in holding that this lease came under the provisions of R.S. 9:3221, cited Meyers v. Drewes, 196 So.2d 607 (La.App.4th Cir. 1967), and Standard Office Supply Co. v. Stonewall Investment Co., 267 So.2d 768 (La.App.2nd Cir. 1972). In both of these cases the lease expressly provided that the lessor would not be liable for damages resulting from defects unless there was prior written notice thereof from the lessee. In the instant case, there is no such "hold harmless" clause or other provision for responsibility for damages which would affect the rights of the lessee granted under La.C.C. Art. 2695. That article provides that the lessor guarantees the lessee against all vices and defects in the thing leased and is liable to the lessee for any loss resulting therefrom.
We have found no case in which the lessor has been exonerated on the basis of R.S. 9:3221 when the lease imposed upon the lessee the mere obligation to keep "the premises in a reasonably good condition," and to return it "in the same condition," and we hold that this language is not sufficient to constitute a waiver of the lessee's rights under Article 2695. As contended by plaintiff herein, the lease simply restates the lessee's legal obligation "to enjoy the thing leased as a good administrator," La.C.C. Art. 2710, and, since "the lessee is presumed to have received the thing in good order," to return it in the same state. La.C.C. Art. 2720.
In addition, the affirmative lease restrictions on the lessee's freedom to make repairs or alterations are inconsistent with defendants' contention that the lessee assumed full responsibility for the condition of the premises, within the intendment of R.S. 9:3221.
We now turn to the defendants' affirmative defense of plaintiff's assumption of risk or negligence, under the rule announced in Redd v. Sokoloski, 2 So.2d 266 (La.App.2nd Cir. 1941), writ denied:
". . . . where a tenant has knowledge of the generally defective condition of a portion of the rented premises, but it reasonably appears that he might safely use it with the exercise of care, his use in such manner does not constitute contributory negligence that would bar his recovery in an action for damages resulting from the defects. If, however, he was aware of the defect causing the injury and it was such as to indicate to a reasonable-minded person that use of the defective portion was apparently and imminently *74 dangerous, recovery is not permitted." (2 So.2d at 268)
The district court found as a fact, in resolving a conflict in the testimony, that plaintiffs did not prove by a preponderance of the evidence that they communicated a complaint to the defendants or to the rental agency. Yet their testimony is clear that they were aware of the defect in the stove for some time before October 14, 1970, when the injuries giving rise to this suit were sustained by Mrs. Nelson. We quote Mrs. Nelson's testimony in pertinent part:
Q. In fact, according to your deposition, you didn't start receiving those shocks until some two or three months prior to October 14, 1970?
A. That's correct.
Q. And when you started receiving these shocks around June or July of 1970, did you report this to your husband?
A. Yes, I did.
Q. And what did he tell you?
A. Well, he told me to call Mr. Reynolds.
Q. And you can tell us in what position you would be inphysical position to receive these particular shocks?
A. Touching the stove.
Q. Well, would the stove be on or off?
A. On, definitely.
Q. Which burner?
A. Well, right front.
Q. You don't recall whether or not you were ever shocked when only the left rear burner was on?
A. I don't recall. I was shocked a few times, you know, quite a few times from the stove.
Q. From about July of 1970 when you started receiving these shocks until October, neither you nor your husband took any preventive maintenance to try to cure this particular shocking?
A. No, I just used the electric skillet most of the time.
Q. Now, the fact that you used the electric skillet was because you felt that stove was dangerous when you received the shocks?
A. Yes, definitely.
Q. It would make you reflex from the stovethe shocks would to the degree that you knew it was dangerous?
A. Yes.
Q. But you occasionally continued using it after you found out that it would shock you in approximately July of 1970?
A. Only if I was sure I had a plastic handle or something where I could pick it up which was very seldom.
Q. Now, on October 14, 1970, when you were cooking potatoes, did you have a plastic handle on that pot?
A. Well, Ievidently I didn't. I don't really recall.
We must conclude on the basis of plaintiff's own testimony and the rule of the Redd case, supra, that her continued use of the defective stove and lack of effort to correct the defect over a period of time was unreasonable. It constitutes a bar to recovery herein. (See also, Harrell v. Johnson, 242 So.2d 648, La.App.1st Cir. 1970)
For the above and foregoing reasons, the judgment of the district court dismissing plaintiff's suit is affirmed, at plaintiffs-appellants' costs.
Affirmed.