## HOLBROOK v. CITY OF MONROE.
### No. 4922.

Court of Appeal of Louisiana. Second Circuit.

Dec. 5, 1934.

Cas Moss and Moss & Moss, all of Winnfield, for appellant.

H. H. Russell and W. A. Walker, Jr., both of Monroe, for appellee.

DREW, Judge.

Plaintiff sued for $15,000, alleging damages she received when she fell upon a main street in the city of Monroe, because of a defective sidewalk.

Defendant denied any negligence and put the case at issue.

The lower court rejected plaintiff's demands and she has perfected an appeal to this court.

There is very little conflict in the testimony on any issue in the case; in fact, the case might have been submitted on a statement of facts, which the testimony discloses to be as follows:

Plaintiff, who lives at Clarks, La., a distance of about forty miles from the city of Monroe, drove from her home to Monroe, in company with two of her brothers, on the morning of September 29, 1932, in a truck which they parked north of De Siard street and east of block two of said street. The two brothers were strangers in Monroe and plaintiff had only visited that city twice before. After leaving the truck, the three walked to De Siard street and turned east on the north side of said street, their destination being a dentist's office farther east on the street. When they reached a point in front of a business house, in which the Heinberg Jewelry Company was doing business, plaintiff stepped into a hole, tripped, and fell to the pavement, fracturing the upper end of the femur bone where it connects with the pelvis, and also injuring her shoulder and back. Plaintiff was carried to the dentist's office, then to the St. Francis Sanitarium, where she remained until the 11th day of February, 1933, under the care of the city's physician and entirely at the city's expense. She was then sent in an ambulance to her home in Clarks, where she was confined to her bed and treated by Dr. Mecom, at the expense of the city of Monroe.

At the time of the accident, plaintiff was walking by the side of one of her brothers, she being next to the curb, the other brother walking behind her; the time was about 10

o'clock a. m. The street on which she was walking was a main business street and the sidewalk is probably the most traveled sidewalk in the city. The width of the sidewalk at the place of the accident from the face of the building to the face of the curb is 8.14 feet. The fall plaintiff received was caused by her stepping into an open water cut-off, the inside dimensions of which were .2 of a foot, or nearly 2½ inches. The heel of her shoe caught in the cut-off box and tripped her. The outside of the cut-off box was 9 inches from the curb and the inside of it was nearly one foot from the curb. The cut-off box was open and had been since the year 1930. One witness testified that in 1930, he used this cut-off box to cut the water off in his place of business and at that time he kept a bucket turned over it, which bucket, due to the concrete having broken away around the box, would be flush with the sidewalk when placed over the cut-off box.

On the day of the accident, the city engineer found a hole broken out around the cut-off box, in the concrete, which was .5 of a foot wide and .6 of a foot long and 1¾ inches deep. The measurement was taken from the top of the sidewalk to the dirt which had filled in around the outside of the cut-off box. From the testimony, it can be seen that this had filled in since 1930. From the top of the cut-off box, which was flush with the pavement, to the dirt or silt which had partially filled the cut-off box, was one foot. This cut-off box was at the extreme west edge of the broken out place in the pavement, and therefore the first part of the defect in the sidewalk which plaintiff would reach in traveling east on said street.

The record discloses that numerous other persons were traveling on the sidewalk and going in the opposite direction from that which plaintiff was going, she necessarily keeping to her right, and being to the right of her brother, with whom she was walking, was naturally placed on that part of the sidewalk where the defect was located. The water cut-off box was supposed to have a cap or top on it which would make it flush with the top of the sidewalk. This top or cap had not been on the cut-off box for several years. After the witness who kept the bucket turned over the cut-off box moved away from this locality, which was in 1930, it was not unusual to find a large "Stop" sign placed over this cut-off box, and on numerous other occasions it was wide open with nothing over it.

The only legal questions in the case are:

First, was the defect as above described of such a nature as to make the city liable for injuries caused to plaintiff by stepping into the cut-off box with the heel of her shoe and being thrown to the pavement?

Second, did the city have actual or constructive knowledge of the defect?

The heel of plaintiff's shoe was 1½ inches long, which is an ordinarily reasonable heel for a woman to wear. It is common knowledge that the average heel on a woman's shoe is small enough to enter a pipe such as this cut-off pipe was, the diameter being 2½ inches. To leave such a pipe open on a much-used sidewalk in a city is clearly a defect in the sidewalk and is not a trivial defect, but is more on the order of a trap which is calculated to cause injury, at least to feminine pedestrians, who wear smaller shoes and smaller heels on them than men.

It is a well-recognized principle of law that municipal corporations owe it to the public to keep the sidewalks in such condition that pedestrians, who are ordinarily careful, will not be exposed to injury. The right of the citizen to recover damages for injuries sustained by reason of the failure of the municipal corporation to discharge the municipal duty imposed upon it is beyond question. Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58.

All that is required of a pedestrian upon a sidewalk is ordinary care and this does not necessitate his looking constantly where he is going. He has a right to assume the sidewalk is safe for travel, and where one sustains injuries by reason of the unsafe condition of a sidewalk, the burden to show that he was not using ordinary care, or contributed to such injuries by his own negligence, rests upon the corporation. Lemoine v. City of Alexandria, supra, and cases cited thereunder.

It cannot be said that plaintiff herein was not using ordinary care when she stepped with her heel into this small pipe, which was practically flush with the surface of the sidewalk. To so hold would be equivalent to finding that a pedestrian is required to keep his eyes glued to the sidewalk and to look where he was stepping before each step, which is not the law in this state or any other state of the Union. The very fact that the open pipe was only 2½ inches in diameter made it more of a trap and less likely to be seen than if it had been much larger. We therefore conclude that the defect was sufficient and such a one as to cause the city of

Monroe to be liable for the injuries received by plaintiff, caused by her stepping into the pipe with the heel of her shoe and being thrown to the pavement.

■ The second question, as to the knowledge of the city, is covered by McQuillin's Municipal Corporations (2d Ed.) vol. 7, p. 240, in the following words:

"Constructive Notice Based on Length of Time. Without variableness the late decisions apply the general rule that if the defective condition or danger which caused the injury has existed for such a period of time that the municipal authorities by the exercise of ordinary care and diligence must have known of its existence, and could have guarded the public against it and failed to do so, notice will be imputed to the municipality. If the municipality fails to make inspection with sufficient frequency to discover the condition, the result is the same. 'It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for travel. They cannot fold their arms and shut their eyes and say they have no notice. After a street has been out of repair so that the defect has become known and notorious to those traveling the street and there has been full opportunity for the municipality, through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice and charges it with negligence.' " Citing cases from Alabama, Connecticut, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Virginia, and the case of Smith v. New Orleans, 135 La. 980, 66 So. 319, wherein the above-quoted provision is cited.

This dangerous defect had existed for several years on a main thoroughfare in the city of Monroe and ordinary inspection of the sidewalk by the city would have disclosed the defect. We are therefore convinced, under the above authority, that the city of Monroe, at least, had constructive notice of the defect in the sidewalk and was negligent in not removing it, and it is liable to plaintiff for whatever damages she received.

■ There is no dispute of the fact that plaintiff is permanently injured and will remain a cripple for the rest of her life. The upper end of the femur was broken, has not healed, and will not heal. She will never be able to use her left leg again. She is a woman 52 years of age and, prior to the accident, attended to her household duties, being then in good health. She is no longer able to attend to her household work and will never again be able to do so. She suffered a great deal, as is clearly shown by the testimony. Plaintiff prayed for damages as follows:

| | |
|---|---:|
| Physical suffering, pain and inconvenience | $ 5000.00 |
| Permanent injury and total loss of use of the left leg | 5000.00 |
| Loss of earning power and ability to care for and maintain her home | 2000.00 |
| Mental suffering | 3000.00 |
| Total | $15,000.00 |

We are of the opinion that a judgment in the sum of $7,500 will do reasonable justice to all concerned and that such a judgment is in line with the jurisprudence of the state in similar cases.

It therefore follows that the judgment of the lower court is reversed and there is now judgment in favor of plaintiff, Mrs. Ella Holbrook, and against the city of Monroe, in the sum of $7,500, with legal interest thereon from judicial demand until paid; and for all costs of both courts.