John and Lydia Cato, the father and mother respectively of Elizabeth Cato, a minor about thirteen years of age, brought this suit against the City of New Orleans, on behalf of their child, claiming damages in the sum of $11,000, because of injuries sustained by her when she fell on the sidewalk in front of the premises No. 2505 Josephine Street. It is alleged that the fall was occasioned by the defective and dangerous condition of the sidewalk due to the presence of numerous holes and depressions and that this condition had existed for more than a year to the knowledge of the City of New Orleans, and that, notwithstanding these facts, the City had failed in its duty to make the sidewalk safe for the use of pedestrians and that its negligence in this respect involves it with liability.
The City defended upon the ground that the sidewalk was neither defective nor dangerous and, in the alternative, that it had no actual or constructive notice of the defects if, in fact, any such existed, and finally, that the injured child and her parents were guilty of contributory negligence.
There was judgment below dismissing plaintiffs' suit and they have appealed.
In his reasons for judgment the learned judge, a quo, found that the child and her parents were guilty of contributory negligence, in that the parents failed to bring the attention of the City to the condition *West Page 451 
of the sidewalk and that the child, knowing of the dangerous condition of the banquette failed, in walking over it, to exercise such care as a "reasonably prudent person" would have done under the circumstances.
That the banquette was in a dangerous condition is not now disputed since, the inspector of sidewalks of the City of New Orleans, as well as several witnesses for the plaintiffs, testified to that effect.
There is no proof that the City had actual notice or knowledge of the condition of the sidewalk until after the accident. On the question of constructive notice we find, as did the trial judge, that the sidewalk was in practically the same condition for a period of two years prior to the accident.
In the recent case of Parker v. City of New Orleans, La.App.,1 So.2d 123, 125, this Court said:
"In Lorenz v. City of New Orleans, supra [114 La. 802, 38 So. 566], the Supreme Court recognized that actual knowledge of an obvious hazard in a sidewalk is not necessary in order to make the City responsible for injuries to a pedestrian. There, it appeared that a young child was injured by stepping into a small hole in a plank forming part of the covering of a fire well in a street intersection which had been allowed to remain in a rotten condition for several weeks prior to the accident. In holding that the City could not be excused from responsibility even though it had no actual notice of the unsound condition of the plank, the court said (114 La. 802, 38 So. 567):
"`We cannot accept the doctrine that a city can permit such structures to rot, and then avoid liability on the ground of want of actual notice of their dangerous condition.'
"So, we say here that, since the unsound condition of the curb has been shown by plaintiff to have been in existence approximately two months prior to the accident, notice of the defect is imputable to the City and it must be held to be negligent in failing to discover it and to make the proper and necessary repairs."
See, also, Holbrook v. City of Monroe, La.App., 157 So. 566, 568; Hebert v. City of New Orleans, La.App., 163 So. 425; and a discussion of the subject in Volume 3, page 737, of the Louisiana Law Review entitled "Local Government Responsibility in Tort in Louisiana".
The fact that the sidewalk had been in a dangerous condition for more than two years is sufficient to charge the City with constructive notice. The failure to inspect the locality is no defense.
"The city charter makes it the mandatory duty of the municipal authorities to keep all streets, bridges, and crossings in repair, and places them under the charge and superintendence of the commissioner of public works, who is required to report their condition, from time to time, to the council. This officer and his subordinates are presumed to do their duty, and to keep themselves posted as to the condition of the streets and bridges under their supposed constant inspection and supervision. They had the means of knowledge, and ought to have known and remedied the defect. * * *
"If the covering had been inspected, the existence of the hole and the rottenness of the plank would have been discovered. Hence there was no inspection, or there was neglect to repair. Negligent ignorance is equivalent to actual knowledge." Lorenz v. City of New Orleans, 114 La. 802, 38 So. 566, 567.
The final and most important question remaining is that of contributory negligence. At the outset we will say that so far as the failure of the plaintiffs, the parents of the injured child, to complain to the City of New Orleans is concerned, whatever may be its effect, it cannot form the basis of a charge of contributory negligence against the child. The evidence concerning the condition of the banquette is to the effect that, the bricks of which it had been constructed, had been, at numerous points, removed, and that in the spaces which the bricks had occupied, water collected in rainy weather; that these holes were so numerous as to give the sidewalk the appearance of stepping stones. The defendant contends that regardless of what may be said of the absence of the bricks and the number of the holes, there yet remained on the surface a path between two and two and one-half feet in width upon which Elizabeth Cato or any other pedestrian could have walked with safety, and it invokes the principle announced in a number of cases to the effect that where a pedestrian has a choice of two or more routes, only one of which is safe, he must take the safe route otherwise he will not be heard to complain of injuries sustained because of his selection of a dangerous *West Page 452 
route. Whalon v. Sewerage Water Board, 142 La. 735, 77 So. 520; Barnes v. City of New Orleans, 4 La.App. 503; Volume 7, McQuillin on Municipal Corporations, at page 281. In the Barnes case, we said that "when two roads, one with and the other without danger, are open to plaintiff and she chooses the former and is hurt, she cannot recover damages".
The burden of establishing, by a preponderance of the evidence, the existence of a safe path on the defective sidewalk, rested upon the defendant. Parker v. City of New Orleans, supra; Holbrook v. City of Monroe, supra; Viola v. Convery, 10 La.App. 85, 122 So. 90; Shannon v. New Orleans Railway Light Company, 4 Orleans App. 302; and Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58. When we examine the proof on this point, we find that it has failed to sustain this burden. Without discussing the evidence in detail, the best that can be said for defendant is, that considered as a whole, it leaves the question in considerable doubt. Moreover, the probabilities are against the existence of a safety zone, for it seems unlikely that a disintegrating brick sidewalk should assume a pattern calculated to promote the safety and convenience of the public by leaving a pathway undisturbed by deterioration or decay and untouched by vandals who, according to the record, occasionally removed the bricks for their private use or advantage. Another consideration appeals to us. The injured child did not place her foot into one of the holes, but upon a brick, which either broke under her foot, as is stated by some of the witnesses, or turned over because of its looseness or, perhaps, as is more likely, both, causing the child to fall. In this aspect of the case it is immaterial where the holes were, for it was not the holes or one of them which caused the accident, but a loose brick.
It is also contended that Elizabeth Cato was contributorily negligent because she lived in the neighborhood for more than a year prior to the accident and had full knowledge of the condition of the banquette and should have traversed it with greater care or with so much prudence and caution as was necessary for her to pass in safety. The accident happened at about 7:30 at night when the view of a pedestrian is affected by the shades of night and, however careful one might be, the danger or hazard to the nocturnal pedestrian is enhanced by the low visibility. Sidewalks must be reasonably safe for pedestrians to use during the night as well as the day, but, as we have said, the child's fall was caused by a loose brick which, if it had been firm, would have been harmless.
In the case of Hebert v. City of New Orleans, La.App., 163 So. 425, 426, we said: "While it is true that there were defects, there was nothing to indicate to her that, by the exercise of care, she could not pass there without mishap. Apparently she could step from one stone to another, or from one fragment to another, with complete safety so long as each remained stationary. She was not negligent, in attempting to do what she did and what she could do so long as the fragments remained as they seemed to be."
What was there said, is particularly true here. In the Hebert case we exonerated a mature woman from the charge of contributory negligence. In this case, for a stronger reason, we hold that a child, thirteen years of age, was not guilty of negligence upon that ground.
Elizabeth Cato sustained a fracture of the knee or, as it is described in the hospital report, "a fracture of the lower third of the right femur, fracture of the upper third of right tibia, hermatosis, right knee". Her leg was placed in a plaster cast and she remained in the hospital eight days when she was sent home with instructions to report from time to time to the Orthopedic Clinic. Three months after the accident, August 27, 1940, an X-ray, taken at the hospital, revealed that "there are signs of healing, but no complete bony union", and, on October 19, 1940, another X-ray was made which showed, according to the hospital records, that "there appears to be complete healing of the fragments of the tibia. There is considerable callous, but not complete bony union of the fragments of the femur". Elizabeth Cato testified that her knee was kept in a plaster cast for six and one-half months, during which time she was compelled to walk on crutches. There is no medical testimony in the record and no evidence of any permanent injury. An examination of similar cases indicates that an award of $2,000 would be proper under the circumstances. Martin v. Zatarain, 7 La.App. 629; Selby v. Manning, La.App., 145 So. 555, and Breaux v. Roussell, La.App., 151 So. 267. *West Page 453 
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, avoided and reversed, and it is now ordered that there be judgment herein in favor of the plaintiffs, John and Lydia Cato, on behalf of their minor daughter, Elizabeth Cato, and against the defendant, the City of New Orleans, in the sum of $2,000, with legal interest from judicial demand until paid, and for all costs.
Reversed.