98 So.2d 824 (1957)
Mamie Lazarus BRANTLEY
v.
CITY OF BATON ROUGE et al.
No. 4513.
Court of Appeal of Louisiana, First Circuit.
November 19, 1957.
Rehearing Denied December 23, 1957.
Writ of Certiorari Denied February 10, 1958.
*825 D'Amico & Curet, Baton Rouge, for appellant.
R. Gordon Kean, Jr., City Atty., H. Alva Brumfield, Velma P. Gerding, Baton Rouge, for appellee.
ELLIS, Judge.
Plaintiff has filed this suit for damages as a result of injuries alleged to have been suffered by her while walking on a sidewalk in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana. The alleged accident and injury occurred while plaintiff was walking on the sidewalk on the east side of St. Ferdinand Street when she reached a point in front of the property of the plaintiff at 619 St. Ferdinand. The suit was filed against Mrs. Annie B. Wright, owner of the property at 619 St. Ferdinand Street, a resident of Centerville, Mississippi, and jurisdiction was acquired over Mrs. Wright by means of a writ of non-resident attachment. The City of Baton Rouge and the Parish of East Baton Rouge were also made parties defendant under allegations that each of the defendants had a duty to maintain or to have maintained in good repair the sidewalk in question, and that their failure to do so constituted negligence contributing proximately to the accident and injuries sustained by plaintiff.
An exception of vagueness, and in response thereto a supplemental answer, was filed, a detailed summary of each being unnecessary to a decision in this case.
The City of Baton Rouge and the Parish of East Baton Rouge are represented by the same counsel in accordance with Chapter 11, Section 11.01 of the Plan of Government of the Parish of East Baton Rouge, City of Baton Rouge, adopted August 12, 1947, effective January 1, 1949. Counsel for each filed a separate exception of no cause or right of action on behalf of the City of Baton Rouge, Parish of East Baton Rouge. Counsel also filed on behalf of the City and Parish a petition and third party demand under the provisions of LSA-Revised Statute 13:3381 in which they prayed for service, a writ of attachment against the property of Mrs. Annie Wright for jurisdictional purposes, and further prayed that if the City of Baton Rouge and Parish of East Baton Rouge, or either of them, should be cast in judgment herein on the principal demand of Mrs. Mamie Lazarus Brantley, *826 that there be judgment rendered simultaneously herein over in favor of the City of Baton Rouge and the Parish of East Baton Rouge against Mrs. Annie Mae Wright for the full amount of any judgment so rendered. Counsel based his petition and third party demand upon the alleged liability of Mrs. Wright as abutting property owner which he alleged arose out of her failure to discharge her "duty" under the provisions of Title II, Section 171 of the Baton Rouge City Code, and/or because she affirmatively created a condition for her own special benefit and failed to maintain it as required by law.
Counsel for defendant, Mrs. Wright, filed an exception of no cause or right of action, an answer in the nature of a general denial and a plea of contributory negligence.
The exception of no cause or no right of action filed on behalf of the City and Parish were referred to the merits by the Lower Court. The City and Parish thereupon filed an answer of denial and a special plea of contributory negligence.
The case was duly tried and judgment with written reasons rendered dismissing the plaintiff's suit at her cost on the ground that she was contributorily negligent. Hence, plaintiff has appealed.
Counsel on appeal both in argument and in his brief is reurging the exception of no cause or right of action filed on behalf of the City of Baton Rouge, and, therefore, we will dispose of this exception at this time.
Counsel for the City of Baton Rouge contends that an abutting property owner has the primary responsibility for the maintenance of sidewalks where the duty to maintain and keep the sidewalks in good repair has been imposed upon the adjacent property owner by statute or ordinance. Under the provisions of Section 20 of Act 169 of 1898, as amended by Act No. 334 of 1946, § 1 (The City charter of the City of Baton Rouge) it was provided that the city council shall have, among other rights and duties, the following power:
"To exercise general police powers, in connection with any function of municipal government within the territorial limits of said city including the right, power and authority, to pass ordinances on all subject matters, including subject matters which the legislature has reserved to itself the right to regulate, but has not regulated or has not fully regulated, or which has reserved to itself the right to legislate, but has not legislated or has passed general or special laws which do not cover the entire subject matter, and on any and all other subject matters without exception, regardless of whether or not the Legislature has enacted special or general laws upon the same subject matter, subject only to the limitation that the provisions of said ordinances shall not directly conflict with the provisions of any State laws upon the same subject * * *."
Under and by virtue of the above quoted authority the City of Baton Rouge enacted an ordinance placing the duty and responsibility of maintaining the sidewalks upon abutting property owners under the provisions of Title II, Sections 171, 172, 173 of the Baton Rouge City Code which reads as follows:
"Section 171. Duties of Owners. It shall be the duty of all owners of lots fronting on streets having paved sidewalks to
"(a) pave, repair, and keep in repair, the sidewalks in front of their said lots by removing all uneven and broken sections and replacing them with such materials as will level the surface and make it uniform,
"(b) provide sufficient drainage over or under said sidewalks to prevent the accumulation or standing of water on or near the sidewalks,
*827 "(c) prevent the growth or accumulation of weeds, grass, dirt or other nuisance on said sidewalks, or the neutral grounds adjacent thereto.
"Section 172. Penalities. Any person, persons, firm or corporation failing to comply with the provisions of Section 2:171 after notice as provided for in Section 2:173, shall on conviction, be fined not more than Ten ($10) Dollars or imprisoned for not more than Five (5) Days or both at the discretion of the City Court. This penalty shall be in addition to paying the cost of improvements or repairs as is provided for in Section 2:173.
"Section 173. Enforcement. It shall be the duty of the Director of Public Works to enforce the provisions of Section 2:171 by notifying personally in writing, or by publication in the official journal, the persons subject to said section, or their agents, of the repairs or maintenance necessary on their respective pavements, and it shall be the duty of such persons to make such repairs or maintenance within Ten (10) Days of personal service or first publication in the official Journal. In default of so doing, the repairs or maintenance shall be made by the Director of Public Works at the expense of the owners, and on completion of the work a statement of the amount due shall be served on the owners or their agents, which if unpaid after Sixty (60) days after service shall, on recording proof of the performance of the work in the office of the Recorder of Mortgages, constitute a lien and privilege upon the property until the sum so due shall be paid."
However, under the plan of government of the Parish of East Baton Rouge and the City of Baton Rouge adopted August 12, 1947 and effective January 1, 1949, under Chapter III dealing with the Governing Bodies, Powers and Duties, we find the following and quote:
"Section 3.01. Powers of the Parish Council. The Parish council of East Baton Rouge Parish shall, in addition to the powers and duties conferred or imposed by other provisions of this plan of government, have:
"(a) All the powers and duties of East Baton Rouge Parish as provided in section 1.02 of this plan of government.
"(b) Exclusive authority, saving the authority of the State of Louisiana, throughout the parish, including the City of Baton Rouge, with regard to the constructing, opening, widening, extending, closing, narrowing, improving, grading, paving, repaving, adorning with trees, shrubs and vines, curbing, guttering, cleaning, repairing, and maintaining of streets, highways, boulevards, parkways, bridges, alleys and other public ways, and the grading, improving, constructing and reconstructing of sidewalks, including the authority to assess the whole or part of the cost of any street, alley or sidewalk improvement on the owners of the abutting property. To that end there are hereby transferred to the parish and to the parish council as the governing body thereof, except as specifically provided in this plan of government, all the powers and duties, hitherto conferred or imposed on the City of Baton Rouge by its charter or by the general laws of the state relating to the above enumerated matters, but such transfer of powers shall not be taken to diminish in any respect the power and obligation of the city, from whatever source derived, to: (1) supply street lighting; (2) regulate traffic and the parking of vehicles, including the provision of facilities for off-street parking; (3) grant franchises or permits for the use of the *828 streets, highways, boulevards, parkways, bridges, alleys and other public ways within the city; for pipes, poles, wire, conduits, street railways, bus lines, taxicabs and other vehicles for hire; (4) regulate the rates and conditions of service of any public utility or other person, firm or corporation holding any such franchise or permit; and (5) make charges and collect compensation for the privileges enjoyed by any such utility person, firm or corporation.
"(c) Power to construct, own, maintain and operate airports, and to provide for their management and control by the department of public works, by a separate bureau in the office of the mayor-president, or by a board of commission.
"Section 3.02. Powers and Duties of the City of Baton Rouge and of the City Council. The City of Baton Rouge as extended by this plan of government shall continue to have all the powers and duties, except as provided in this plan of government, heretofore possessed by the City of Baton Rouge under its charter and the general laws of the state, and such other powers and duties not inconsistent with this plan of government as hereafter may be conferred or imposed on municipalities of the same population class. All provisions of the charter of the City of Baton Rouge not in conflict with the provisions of this plan of government are expressly continued in force and effect and henceforth, shall be subject to amendment only to the same extent and in the same manner as hereinafter provided for the amendment of this plan of government. All ordinances of the City of Baton Rouge in force prior to the first day of January 1949 shall, insofar as they are not inconsistent with this plan of government, remain in force and effect until amended or repealed by the city council." (Emphasis added.)
It is clear under Section 301 and 302 that the City of Baton Rouge no longer had any authority insofar as the sidewalk construction or repair of same were concerned, as this authority was made exclusive by the quoted section. The Ordinance of the City of Baton Rouge is null and void as being ultra vires, that is beyond the power of the city to enact. Therefore, if the exclusive authority to deal with the sidewalks is in the parish of East Baton Rouge, then there can be no liability insofar as the City of Baton Rouge is concerned, as there is no duty upon the City of Baton Rouge.
The exception of no cause or right of action for the reasons given is hereby sustained insofar as the City of Baton Rouge is concerned.
The exception of no cause or right of action filed on behalf of the parish of East Baton Rouge involves the merits of the case and the answer as to whether the parish or the abutting property owner is liable, barring contributory negligence on the part of the plaintiff, will be decisive of the issue raised by the exception of no right of action.
We next take up the question of whether the plaintiff's action is barred by her contributory negligence and in order to do this it is necessary that the facts be understood. The District Court in his written reasons fairly stated the facts, the pertinent portion of which we quote:
"The site of the accident is about four blocks from the court house. The testimony of plaintiff as to the exact spot where the accident occurred was taken at the site. Plaintiff undertook to mark the exact spot on the several photographs offered in evidence, and discrepancies therein are noted. However, from her testimony taken at the site, I am convinced that at the instant the accident occurred plaintiff's left foot was at the spot indicated by the writer by the letter `S' in red ink on the photograph offered in evidence and identified as `Wright *829 1'. The broken piece of concrete shown in this photograph is triangular in shape, about 24 inches long at its greatest length and about 18 inches wide at its greatest width. Some three or four inches of the right side of this slab is now covered with dirt. The broken right edge now covered with dirt is indicated by the red ink line on the photograph. I am satisfied from the evidence that at the time of the accident this broken right edge had no dirt on it and was clearly visible to a pedestrian. The testimony and the physical facts convince me that at some time in the distant past a layer of concrete was placed on the original brick sidewalk at the spot in question. Also at some time in the distant past a section of the street curb was removed near the spot in question allowing the passage of motor vehicles across the sidewalk and into the alley as shown by the photograph P-10. From an examination of the physical facts it is my opinion that the passage of vehicles across the sidewalk from time to time through the years had nothing to do with the breaking of the slab of concrete in question, since it appears that the wheels of the vehicles did not cross and could not have crossed the sidewalk above the point marked `D' in red ink on the photograph `Wright-1'. From personal inspection I have no doubt that the slab was broken by the roots of a tree, the stump of which is shown in the photograph. When the roots raised and broke the concrete one brick remained attached to the under side of it at the upper end. The slab is some three or four inches thick at that point but thins out toward the lower point and right edge. At the time of my inspection the slab was solid and stable, but the evidence indicates that at the time of the accident it tilted and rocked when weight was applied to it. How much it would depress at any given point could not be determined, but one of the witnesses, Mrs. Mary Furrow, who was with plaintiff at the time of the accident, said it would drop down two or three inches.
"The evidence shows that plaintiff stepped on this slab while walking up the sidewalk at about mid-morning of a clear day. She was walking on the street side of the sidewalk with her right hand holding the left hand of a two year old child who was walking on the residence side of the sidewalk. She testified that when she placed her left foot on the concrete slab the slab tilted or wobbled, causing her to partially lose her balance. She did not fall, but in her efforts to regain her balance and avoid a fall she turned her left ankle. It later developed that she sustained a fracture of the ankle.
"Plaintiff is a lady in the middle fifties of well above average weight. She testified she knew the sidewalk was in a bad condition. Immediately prior to the accident she walked over a portion in worse condition than the portion at the point of the accident. See Photograph P-2.
"The owner of the abutting property has resided in Mississippi for many years. The property is managed by an agent. Assuming that the situation described constitutes a defect in the sidewalk, there is no evidence that it was ever brought to the attention of either the owner or her agent, nor is there any evidence that the city had any actual notice of the defect.
"It is freely admitted by all parties that the sidewalk in question, like numerous other sidewalks in Baton Rouge, has for many years been in a bad condition."
The condition of this sidewalk at the point where the plaintiff sustained her accident is clearly and graphically shown in the pictures offered in evidence. As found by the District Judge and as clearly sustained by the evidence this sidewalk was in an extremely bad state of disrepair on the date of the accident. The condition apparently was due to age and more so to the roots of a large tree which apparently grew up under the brick sidewalk on which at this point a layer of concrete had been poured over the bricks, and also due to the *830 automobiles of plaintiff's tenants driving across this sidewalk at this point in order to park in the driveway to the south of plaintiff's house. At the exact point which the district judge found from the facts that the plaintiff had fallen the damage as found by the district judge appears to have been done by the tree rather than by the automobiles which pass over the sidewalk to the south of this spot. The district judge found and the evidence shows that at the point of place where the plaintiff suffered her accident the top layer of the concrete had broken in somewhat of a triangular shape and underneath was a brick or two bricks. This was the general condition of the sidewalk in this area, particularly in the driveway and also north and south of the driveway across the entire sidewalk, as shown by the pictures. Some pieces of the broken top layer of the concrete are larger than others, however. The learned judge below described the particular slab in his reasons for judgment upon which the plaintiff stepped and fell in the following language: "The slab is some three or four inches thick at that point but thins out toward the lower point and right edge." As this slab of concrete was still upon top of a brick the description given by the judge would account for the slab moving up and down some two or three inches on the thin side. The next question is whether this defect was obvious or should have been obvious to the plaintiff and we find from the facts that the plaintiff was proceeding in a reasonably careful manner and as an ordinarily prudent person should under the facts and circumstances shown with regard to this sidewalk at this point. According to the testimony the slab of concrete gave the appearance of a level piece of concrete and we do not believe that it was patently or obviously dangerous. It was perfectly level at the thick edge to the left and as described by the judge of the lower court it thinned down on the right hand side and edge so as to make it unstable to the extent of only two or three inches. Plaintiff, as found by the lower court, had traversed a much worse portion of the sidewalk before reaching this particular spot or stone that caused her to twist her ankle. We believe that she was proceeding in a reasonably careful manner and as an ordinarily prudent person would have done, and that this broken piece of concrete constituted a trap. We agree with the following argument made by counsel for plaintiff in his brief: "The following language of the Court of Appeals, Second Circuit, in the case of Waggoner v. City of Minden, 9 So.2d 244, is pertinent here: `The allegations of plaintiff's petition shows that the meter box, with its apparently stable but actually unstable cover, was in reality a trap.' Certainly in the case at hand the concrete slab was `apparently stable but actually unstable', and meets the test set forth in the Waggoner case."
The judge below also concluded in this case that had the plaintiff veered to her right she would have had a smooth stable surface on which to walk and quotes the doctrine: "Where a pedestrian has a choice of two or more routes, only one of which is safe, he must take the safe route, otherwise he will not be heard to complain of injuries sustained. Cato v. City of New Orleans [La.App.], 4 So.2d 450; Kuntz v. City of New Orleans, 10 So.2d 658; Bodenheimer v. City of New Orleans [La.App.], 18 So.2d 224; Hudgens v. City of New Orleans [La.App.], 54 So.2d 436 [536]." Upon the ground that the plaintiff was not using due care and that she had a safe route which she failed to take the Lower Court found that plaintiff was contributorily negligent.
While we are loathe to disagree with our learned brother below, from the pictures offered in evidence and the testimony it is shown that this entire sidewalk all the way across is broken into different concretelooking slabs. It brings to mind the expression or saying that whichever route you take you wish you had taken the other.
The case at bar on the point under discussion is strikingly similar to the case of *831 Cato v. City of New Orleans, La.App., 4 So.2d 450, 452, which involved a sidewalk accident by a thirteen year old child as a result of her having stepped upon an apparently level brick but which was loose and turned causing her to fall. In this case our brethren of the Orleans Court of Appeal stated:
"The burden of establishing, by a preponderance of the evidence, the existence of a safe path on the defective sidewalk, rested upon the defendant. Parker v. City of New Orleans, supra [La.App., 1 So.2d 123]; Holbrook v. City of Monroe, supra [La.App., 157 So. 566]; Viola v. Convery, 10 La.App. 85, 122 So. 90; Shannon v. New Orleans Railway & Light Company, 4 Orleans App. 302; and Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58. When we examine the proof on this point, we find that it has failed to sustain this burden. Without discussing the evidence in detail, the best that can be said for defendant is, that considered as a whole, it leaves the question in considerable doubt. Moreover, the probabilities are against the existence of a safety zone, for it seems unlikely that a disintegrating brick sidewalk should assume a pattern calculated to promote the safety and convenience of the public by leaving a pathway undisturbed by deterioration or decay and untouched by vandals who, according to the record, occasionally removed the bricks for their private use or advantage. Another consideration appeals to us. The injured child did not place her foot into one of the holes, but upon a brick, which either broke under her foot, as is stated by some of the witnesses, or turned over because of its looseness or, perhaps, as is more likely, both, causing the child to fall. In this aspect of the case it is immaterial where the holes were, for it was not the holes or one of them which caused the accident, but a loose brick.
* * * * * *
"In the case of Hebert v. City of New Orleans, La.App., 163 So. 425, 426, we said: `While it is true that there were defects, there was nothing to indicate to her that, by the exercise of care, she could not pass there without mishap. Apparently she could step from one stone to another, or from one fragment to another, with complete safety so long as each remained stationary. She was not negligent, in attempting to do what she did and what she could do so long as the fragments remained as they seemed to be.'"
We feel that in the case at bar the language above quoted in the Cato case is particularly appropriate. We fail to find any so-called safety zone in this sidewalk all the way across from the pictures and on the northern end just approximately one step from the loose piece of up-turned concrete, a root of a tree had grown all the way under the sidewalk and as a result the entire width at this point was raised up and as previously stated the sidewalk was in very bad state of disrepair as clearly shown by the testimony and the pictures introduced in evidence. In the case at bar if this apparently level and smooth piece of concrete slab had remained as it "seemed to be", that is, stationary, there would have been no accident to the plaintiff. Under the facts of this case we do not believe that plaintiff was guilty of contributory negligence.
The next question which we will dispose of is the liability of either the abutting property owner, the defendant Mrs. Wright, or the Parish of East Baton Rouge, or both. Counsel for the defendant Parish in his brief contends as follows:
"It has been generally held that where the abutter makes special use of the sidewalk, he or she owes a duty to the public to maintain it in a reasonably safe condition. Where injury results, the abutter is liable by virtue of the fact that he created and failed *832 to maintain the thing from which the injury resulted. See McQuillin, Municipal Corporations, 3rd Edition, Vol. 19, Section 54.19, at pages 89 and 90.
"The Louisiana jurisprudence follows the general rule. Thus, in the case of Johnson v. Sewerage and Water Board, et al, [La.App.], 57 So.2d 923 (Writ of Certiorari denied), the Court of Appeal for Orleans held as follows:
"`However, in that case we reached the conclusion that in certain rare instances possibly the owner of property adjacent to a sidewalk which is defective may be held liable, provided it be shown that the owner himself actually constructed the sidewalk in a defective way, or actually created the dangerous condition from which the damage resulted.'
"The holding in the Johnson case is in accord with the decision reached by the Supreme Court in the case of Arata v. Orleans Capital Stores [219 La. 1045], 55 So.2d 239, wherein it was concluded:
"`In the instant case plaintiff's allegations, although vague in some respects, seem to charge the Store (the abutting owner) with having knowingly caused the undermining and breaking down of the sidewalk's foundation by maintaining an adjacent depression on its property which, together with the permitted and described vehicular traffic over the crossing, resulted in the offending defect. If this charge be true the Store, in our opinion, was guilty of a nuisance, subjecting it to liability for injury therefrom, the same as if it had made an excavation in or placed an unauthorized obstruction across the sidewalk that produced the accident. Therefore, we are obligaed to hold that the petition herein states a cause of action against the Store and its insurer.'
"Therefore, under the allegations of plaintiff's supplemental and amended petition, the established facts of the case, and the recognized jurisprudence, the abutting property owner in this case is primarily liable to the plaintiff, if liability exists, and the exceptions of no right of cause of action filed on behalf of the Parish and City should have been sustained. As heretofore pointed out, plaintiff did not make alternative allegations of negligence. She alleged and proved that the abutting property owner or her agents created a condition, and used it for their special benefit, but thereafter failed to maintain the condition thus created. The abutting property owner and the public agencies involved cannot all be primarily liable to the plaintiff; either the abutting property owner is primarily liable or the public agencies are primarily liable. In this case the plaintiff has fixed the primary liability on the abutting property owner and, therefore, her claim as against the public agencies must fall."
The testimony shows that this sidewalk at this point had been in an extremely bad condition which existed prior to the time that Mrs. Wright inherited the property. Furthermore there is no evidence that Mrs. Wright had the concrete slab poured on top of the brick sidewalk. There is no evidence whatsoever that Mrs. Wright actually constructed the sidewalk in any defective way. In fact, Mrs. Wright did not construct the sidewalk at all nor did Mrs. Wright actually create the dangerous condition from which the damage resulted. It is true that some of the damage to the sidewalk was undoubtedly caused by the cars of Mrs. Wright's lessees who crossed the sidewalk at this point in order to park in the driveway to the south of the house. However, as found by the district judge, the damage which was done or was apparent at the point where the plaintiff fell was caused by the roots of a large tree which had grown under the brick sidewalk at *833 this point. Under the facts we do not believe the cases cited by counsel for defendant as quoted above are apposite, and therefore hold that there is no breach of duty such as would render Mrs. Wright primarily liable as contended by defendant under the above argument advanced and quoted from his brief.
Counsel for defendant next contends that there was a primary duty upon the defendant Mrs. Wright by ordinance of the City of Baton Rouge, supra, to maintain the sidewalk in front of her property but he also admits that under the common law "private actions do not lie for breach of public duty." In the absence of any legal duty imposed by statute or ordinance and therefore as the City of Baton Rouge had by ordinance imposed such a duty on the defendant her failure to comply rendered her primarily liable. As we have previously held herein that the ordinance of the City of Baton Rouge was null and void, having been enacted without authority as only the Parish had such authority under Chapter III, Section 3.01, and Section 3.02 of the plan of government of the Parish of East Baton Rouge and the City of Baton Rouge as adopted August 12, 1947 and which became effective January 1, 1949, and which we have previously quoted. The Parish of East Baton Rouge or the Parish Council never passed any ordinance on the subject and therefore under this theory defendant Mrs. Wright is not primarily liable. Under the facts of this case the Parish had at least constructive notice of the condition of this sidewalk which is sufficient to establish responsibility. Parker v. City of New Orleans, La.App., 1 So.2d 123, Cato v. City of New Orleans, supra.
While our holding of the Parish as primarily responsible in the case at bar renders our passing upon counsel's third party petition unnecessary we do not hesitate to state that had Mrs. Wright been found guilty of such a breach of duty as to render her negligent or secondarily liable, the Parish would have been entitled to a judgment in the same amount against her as was obtained against the Parish.
The only remaining question is one of quantum. The evidence shows that immediately after plaintiff injured her foot she returned home and applied hot water. Her foot pained her so much that she took quite a number of aspirins and finally decided after several days to go to Dr. Lee in Baton Rouge. Dr. Lee told her that without an X-ray he could not tell whether there was a bone broken in her foot or not but advised her that she could probably make a trip to see her sister in Virginia which she had already planned. Dr. Lee gave her some tablets for pain and plaintiff went on the bus to Virginia and after arriving there her foot hurt her so much that she went to Dr. Gilbert who had her foot X-rayed and discovered the fracture of the bone. He placed the foot in a cast which remained until after she had returned to Baton Rouge some several weeks later. On her return to Baton Rouge she went back to see Dr. Lee who advised her to have the cast removed and plaintiff did this herself. She was sent to Dr. Camponella which was on July 22, 1955 where an x-ray of the ankle joint was taken which showed a fracture of the medial malleolus in good position and showed evidence of healing. However there was stiffness present at that time. Dr. Camponella diagnosed Mrs. Brantley's disability as being a permanent 10% disability of the ankle as a result of traumatic arthritis following the injury to the foot, and also stated that in his opinion the plaintiff would suffer pain on and off permanently and particularly in changes of the weather.
Counsel cites the case of Eleazar v. Illinois Central Railroad Co., 24 So.2d 387, which was decided by the Orleans Court of Appeal in 1946 and an award of $4,000 as compensatory damages for plaintiff's pain and suffering and a permanent injury to his foot was made. The injuries in the cited case as a result of the accident revealed that he had sustained a fracture of the *834 metacarpal bone of the left hand resulting in slight posterior angulation and fractures of the second, third and fourth metatarsal bones of the left foot, causing a depression of the interior arch and abnormal callosity of the sole of the foot. In addition he suffered contusions and abrasions common to accidents of his type. We believe that the injuries suffered by the plaintiff in the cited case were greater than to the plaintiff in the case at bar. However, we do realize that in 1946 that while the purchasing power of the dollar was decreased today it is more so.
Counsel for plaintiff also cites the case of Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417, in which this court upheld an award of $5000.00 for injuries to plaintiff which consisted of fracture of the two main weight bearing bones of the right foot, severe pain at the time of the accident, present discomfort and residual pain from time to time and a permanent disability of ten to fifteen per cent, especially causing discomfort or pain on weight bearing necessary in plaintiff's occupation. Plaintiff was also in a cast for approximately two months and suffered some discomfort during this time. We cited in support thereof Eleazar v. Illinois Central R. Co., supra, which we have just discussed. We also believe that plaintiff's injuries in the last cited case were more serious and particularly in respect to Spurlock's occupation for it was shown that he was an ordinary laborer and that he would suffer discomfort and pain in attempting to do his work which of necessity required weight bearing on the foot. We believe that an award of $2,500 would be proper under the facts and circumstances of the case at bar for plaintiff's pain and suffering and disability.
Counsel also asks for judgment covering medical expenses which he has proven in the record, however, on the trial of the case Mrs. Brantley testified that she was married and only separated from her husband and not by any judgment of the court, whereupon counsel then made objection on the ground that these items could only be sued for by the husband who is primarily liable therefor. Counsel in his brief has evidently abandoned his prayer for judgment on behalf of the plaintiff for medical expenses as he does not mention same in his brief.
For the above and foregoing reasons the judgment of the district court is set aside and reversed and it is now ordered that there be judgment in favor of the plaintiff and against the defendant, the Parish of East Baton Rouge only, in the full sum of $2,500 with legal interest from judicial demand until paid and all costs of this suit.

On Application for Rehearing
PER CURIAM.
The Parish and City of Baton Rouge, in its application for rehearing, strongly urge that a rehearing should be granted with regard to our holding that Title II, Sections 171-173, of the Baton Rouge City Code is "null and void, as being ultra vires." Certain far-reaching effects are alleged to result from such a holding, which require the opportunity for further argument.
While we remain convinced that the statutory delegation of the enumerated powers to the Parish Council may raise serious question as to the validity of their attempted exercise by the City government, nevertheless upon further consideration we have come to the conclusion that we need not pass upon the validity or constitutionality of the ordinance in question. This ordnance, quoted in full in our original opinion, attempted to place upon the owner of the abutting property the duty to repair the public pavement. But we agree with the learned trial judge's holding as to the contention of defendants that such an ordinance relieved it of the duty to maintain safe sidewalks and placed it upon the abutting property owner: "It is my *835 opinion that in so far as third persons are concerned the above-quoted provision neither increases the liability of the owner nor lessens the liability of the city as to defective sidewalks. It imposes a duty upon the owner owed solely to the city. McGurk v. City of Shreveport [La.App.], 191 So. 553." (Italics ours.)
Further, under Section 173, this duty to the city does not arise until the landowner has been notified by the Director of Public Works of the repairs or maintenance necessary upon his pavement. Since it is admitted that no such notification was ever given to or received by the landowner herein, even if the statutory provision is valid, no default upon the landowner's part is shown by reason of which she is liable over as a third party defendant to the municipal government which is primarily responsible to third persons injured by reason of the defective condition of municipal sidewalks.
For the above and foregoing reasons, the application for rehearing is denied. Plaintiff-appellant's application for rehearing is also denied.
Rehearing denied.