REID, Judge.
The plaintiffs have filed a suit in tort, resulting from a fall sustained by Mrs. Elizabeth Hicks on the L.S.U. campus on the 18th of April, 1963, at about 8:00 o’clock P.M.
The plaintiffs were living in the married students’ apartments, in K-108. Mr. Hicks was attending Louisiana State University and his wife was attending the Draughon’s Business College. She had some bookkeeping cards that needed to be typed in alphabetical order and she did not have a typewriter. After she put her children to bed, she decided to borrow a typewriter from a Mrs. Carroll Phillips, who lived in another married students’ apartment across the parking lot to the north of K Building in H Building.
The L.S.U. married students’ apartments involved in this case are a series of apartment units adjacent to Nicholson Drive on the northwst corner of the L.S.U. campus, east of the Illinois Central Railroad tracks. In the area in question, the G and H apartments consist of four buildings, two facing the north and two facing the south, the southern building faces a parking lot to the south and the northern building faces a parking lot to the north. There are sidewalks in between the G and H, and sidewalks along the front of the buildings. J and K Buildings are identical, the northernmost buildings of J and K apartments face a parking lot north of them, the southernmost buildings of J and K apartments face a parking lot to the south of them. The parking lot opens on Nicholson Drive on the east and a driveway adjacent to the Illinois Central right-of-way fence is located on the west. Down the middle of the blacktop parking lot runs a concrete apron of approximately 14 inches and a curb rising approximately 6 inches above the apron. In between the curb to the north and the curb to the south, is a grassy drainage area that was rather thickly overgrown, with tall grass or weeds in the area of the accident. In the middle of the drainage area were some drainage grates about 14 inches square. The drainage areas between the two curbs were approximately three feet apart, and the drainage area was approximately 13 inches from the top of the curb to the ground level of the bottom of the drainage area.
On the night in question Mrs. Hicks left her apartment, walked between the middle sidewalk, between the married students’ buildings, J and K, in a northerly direction toward the middle drain in the parking lot immediately north of buildings J and K. When she reached the curb adjacent to the middle grate, or drain, in the drainage area separating the north section of the parking lot from the south section of the parking lot, she stepped with her right leg up on the curbing and drew her left leg to the curbing, then she put her right leg down into the drainage ditch. While engaged in this maneuver, it threw her hips out of balance, and her left leg “went back” and the knee joint snapped, causing her to fall. She tried to get up and found she could not, so she sat on the edge of the culvert and called for help. After she was assisted to her apartment, the doctor directed them to take her to the Baton Rouge General Hospital, where she was X-rayed and hospitalized.
Plaintiffs’ original suit was against Louisiana State University and Charles Carter and Company, Inc., the latter having constructed the building. Supplemental pleadings were filed joining H. A. Lott, Inc., as *92 a defendant. The specific acts of negligence charged by plaintiffs to the defendants herein are as follows, to wit:
“(a) Construction of, and maintenance of a hazardous condition on the parking lot between Buildings ‘K’ and ‘G’.
(b) Failure to provide a walkway across the drainage ditch or gutter for pedestrians.
(c) Failure to properly construct the parking lot in a safe manner and according to specifications.
(d) Failure to provide sufficient lighting so that the hazardous condition could be seen by pedestrians.
(e) Failure to warn pedestrians of the existence of a hazard on the parking lot area.
(f) Failure to maintain the parking lot and the drainage ditch or gutter properly.
(g) Failure to act to correct the hazard of which the Defendants had knowledge due to previous accidents occurring in the same place.
(h) Failure to cut the grass and weeds in the drainage ditch or gutter so that the hazardousness of the area could be discovered by pedestrians.
(i) Failure to provide a safe method or path of ingress and egress for pedestrian tenants.”
Plaintiffs dismissed the suit as to H. A. Lott, Inc., during the trial on merits.
For written reasons assigned on May 4, 1965, judgment was rendered in favor of the defendants, Louisiana State University and Agricultural and Mechanical College, and Charles Carter and Company, Inc., dismissing plaintiffs’ suit, at their costs. This judgment was read and signed in Open Court on May 20, 1964.
The plaintiffs moved for a devolutive appeal to this court which was filed on October 14, 1965.
Counsel for plaintiffs argues that there-are two areas involved in the accident. One-area involving a break in the parking lot between the first and second groups of married students’ apartments, where the-plaintiffs lived for several years prior to-the accident. And the break in the parking lot between the third and fourth group-of married students’ apartments, which is where the accident happened. Plaintiffs argued that Mrs. Elizabeth Hicks originally-lived in the first group of married students” apartments and walked across the area separating the parking lot lying between these-apartments, and the second group of apartments on many occasions. She knew that the soil in the middle of the area where the grass was growing was approximately level with the curbs on the north and south sides of the area.
At the site of the accident, which we have described in detail above, plaintiffs argue that instead of the soil in between the two curbs running down the middle of the parking lot being level with the curb, there is a 13 inch drop from the top of the curb to the soil inside the area. They also argue the area between the curbs at the site of the accident had tall grass and weeds, which disguised the distance from the top of the curb to the ground underneath.
In effect, they argue the University created a “trap” since Mrs. Hicks was not familiar with the condition between the curbs at the site of the accident, and that she had a right to assume it was similar to the other “neutral ground” where she previously lived.
Plaintiffs argue that Mrs. Hicks had never before observed this structure except on the few occasions she passed in the general area while driving her automobile. It is their contention that Mrs. Hicks assumed that it was identical with the other structure which she had crossed many times. When Mrs. Hicks stepped onto the curb *93 and took a step forward, she assumed that the soil was approximately; level with the curb. The soil was, in fact, lower by 13 inches than the top of the curb.
The plaintiffs’ other arguments are that it was also established that the accident occurred at night in the parking lot where there were no lights. The structure in which Mrs. Hicks had the accident, although the same general appearance and located in the same place with relation to the parking lot and the apartment buildings where Mrs. Hicks had lived previously, was, in fact, 13 inches below the curbs, and there was tall grass throughout several spots throughout the structure. There were no warning signs in the area and no designated cross-walks across the middle of the structure.
The plaintiffs also argue that, according to the testimony of Mr. S. J. Dupree and the plans of specification show, there should have been a slanting downward of the soil from the curbs on each side of the structure, from a height of 6 inches below the curb to a height of 12 inches below the curb at the point of the center of the structure where the drain grill was located. In his reasons for judgment the lower court, in dealing with the question of negligence of Charles Carter, had this to say:
“Plaintiff sued Charles Carter & Company, Inc., as the contractors who had constructed this parking lot and the drainage ditch. The Court is first of the opinion that there is nothing in the record to show that the construction was not in accordance with the plans and specifications and the Court, for that reason, is of the opinion that Charles Carter & Company, Inc. are in no way responsible to plaintiff for her injuries.”
Insofar as the negligence of the Louisiana State University is concerned, the lower court’s reasons for judgment were as follows, to wit:
“The only question remaining is whether or not Louisiana State University is negligent in having such a drainage area in the center of the parking lot and, if so, was Mrs. Hicks guilty of contributory negligence in trying to cross the drainage ditch at night, under the existing circumstances. Although Mrs. Hicks referred to the area where she was injured as a drainage ditch and stated in her deposition that she knew the drainage ditch was there, in her testimony she stated that she knew the area vaguely, but did not realize that this was a ditch. She stated that she had lived in one of the apartments further north of the apartment where she was residing at the time of the accident, and that the parking lots-were drained in the center of each lot with a catch basin and the dividing area was filed with dirt to the top of curb. She stated that she was of the opinion that this was the same type of condition and that when she stepped from the curb, she thought she was stepping onto-level ground. The catch basin shown in photograph P-7 is approximately the area in which Mrs. Hicks was injured. Mrs. Hicks suffered polio as a child and never fully recovered from this illness. She stated that at the time of the accident she was not on crutches, but she had to be extremely careful because of weakness in the lower extremity which had been affected by the previous illness. She stated' that when she approached the area where she fell, she stepped upon the curb with her good leg, then brought the weak leg up to the top of the curb and then stepped off again with her good leg, thinking that the ground was level, and that when she reached a certain point in stepping down, the left knee, which was stiff, snapped and she fell in the drainage ditch. At the time of the trial, Mrs. Hicks was wearing a leg brace and using a crutch. “The Court went out to the scene of this accident and found the area to be pretty much as shown in the photographs. These apartment buildings are situated in a row separated by two parking lots between each two rows of buildings. Along the side of each building, running from *94 the extreme eastern edge of the apartments to the extreme western edge of the apartments, which would he near Nicholson Drive, there is a lighted, covered walkway upon which the lower apartments open. Also at each end of the parking area there are pathways and sidewalks which are used by pedestrian traffic. The parking area itself is not lighted except for whatever light there may be from the apartments. The testimony also showed that there were a number of automobiles parked in this area at about 45 degree angles to the curb, as shown in the photographs by the white lines separating the individual parking spaces and by the vehicles in the photographs. She made her way between two parked automobiles and, as previously stated, she stepped upon the curb and attempted to cross the drainage ditch. It will also be noted from the photographs that weeds and grass are growing in the drainage ditch and protruding up above the curbs, which Mrs. Hicks contends caused her to think that the drainage ditch was filled with dirt to the top of the curb. The Court is not prepared to- say that the University was not guilty of some neglience by permitting vegetation to grow in the drainage ditch or in not properly lighting the area to prevent people falling over the curb into the drainage ditch. However, our jurisprudence establishes that where a safe way has been provided for pedestrian traffic and a pedestrian chooses to proceed by an unsafe route, the pedestrian is guilty of negligence, if injured.
“This Court is of the opinion that Mrs. Hicks, being aware of the physical limitations of her left leg, should have been even more careful that the average person and should have taken the safe passageway provided by the University, rather than attempting to navigate across a dark parking lot and accross the curbs which she knew existed. She admits that she was familiar with this area, but did not know that the ditch existed below the level of the curb. If Mrs. Hicks had taken the safe passageway provided by the University, she would have had lighting all of the way, and would not have been traversing an area which she must have known to be dark, due to the fact that any light from the apartments would have been blocked off by the automobiles parked at the curb.” (Emphasis ours)
The substance of plaintiffs’ specifications of error was that the trial court erred in holding that the University had provided a safe passageway for the plaintiff, Mrs. Elizabeth Hicks, to use other than the route she had taken. The other specification of error was that the lower court erred in holding the defendant, Charles Carter and Company, Inc., not guilty of negligence in the construction of the area where plaintiff-appellant Mrs. Elizabeth Hicks, fell.
Plaintiffs contend that the owner of premises has a very high degree of care and maintenance of the premises with regard to the safety of persons lawfully using the premises, citing Roberts v. Courville, La.App., 162 So.2d 750; Hesse v. Marquette Casualty Company, La.App., 170 So.2d 173; Provost v. Great Atlantic & Pacific Tea Company, La.App., 154 So.2d 597.
We have no quarrel with the principles of a law enunciated and set forth by the plaintiff herein in the cases cited above; however, affirmative defenses are available to the defendants, and it is well settled that each case depends upon the particular facts of the case as to whether there is liability or not.
Plaintiffs rely heavily on the case of Estes v. Aetna Casualty & Surety Co., La.App., 157 So. 395. In that particular case the plaintiff was a tenant suing the landlord for injuries sustained when he slipped on some bricks that the landlord had allowed in the court yard where the plaintiff lived. The landlord-defendant knew there was a somewhat dangerous condition because slime and dirt had accumulated on the bricks.
*95 Plaintiffs argue that in that case the tenant knew of the hazardous condition and was still allowed to recover from the defendant landlord. In the Estes case, supra, the defendants urged that there was an alternate safe route defendant could have taken rather than using the pathway he used with a defective condition that possibly could endanger him.
As a matter of fact the Court found that the defendants failed to discharge the burden placed upon them to prove there was an alternate safe passageway for the use of the plaintiff, and the particular portion of that opinion we quote as follows:
“But, as a matter of fact, the evidence raises a grave doubt as to whether the front entrance was available. The very interesting historic lock on the front door had broken, and there had been some controversy as to its replacement. In the meantime the door could not be used. We find it unnecessary to determine whether Estes should have replaced the lock, or whether Miss Kinsey should have done so. Estes was willing to replace it with one of a different and more modern kind, whereas Miss Kinsey insisted upon the repairing of the original lock. At any rate, under all the circumstances, Estes was not negligent in using the rear passageway.”
In support of plaintiffs’ position, they also site the cases of Brantley v. City of Baton Rouge, La.App., 98 So.2d 824; Parker v. City of New Orleans, La.App., 1 So.2d 123. In the Brantley case, cited supra, the lower court held that where a pedestrian has a choice of two or more routes, only one of which is safe, he must take the safe route, otherwise he will not be heard to complain of injuries sustained. This court in reversing the lower court had this to say:
“We feel that in the case at bar the language above quoted in the Cato case [Cato v. City of New Orleans, La.App., 4 So.2d 450] is particularly appropriate. We fail to find any so-called safety zone in this sidewalk all the way across from the pictures and on the northern end just approximately one step from tire loose piece of up-turned concrete, a root of a tree had grown all the way under the sidewalk and as a result the entire width at this point was raised up and as previously stated the sidewalk was in very bad state of disrepair as clearly shown by the testimony and the pictures introduced in evidence. In the case at bar if this apparently level and smooth piece of concrete slab had remained as it ‘seemed to be’, that is, stationary, there would have been no accident to the plaintiff. Under the facts of this case we do not believe that 'plaintiff was guilty of contributory negligence.”
In the case of Parker v. City of New Orleans, cited supra, in discussing the question of contributory negligence, the Court had this to say:
“The last and most important question raised by the City in this case is whether the plaintiff was guilty of contributory negligence in failing to observe the existence of the defect in the curbing. Counsel for the City, in arguing that, had Mrs. Parker been careful and alert, she would have noticed the condition of the curbing, rely upon our recent decision in Ansley v. City of New Orleans, supra [La.App., 168 So. 343], where we held that the plaintiff, in tripping over a broken metal curbing strip while stepping from the street onto the sidewalk, was guilty of contributory negligence in not noticing the defect which was obviously dangerous. On the other hand, plaintiff’s counsel confidently depend upon our opinion in Miller v. City of New Orleans, supra [La.App., 152 So. 141], where we found that the plaintiff, in stepping from the curbing into the street at night and coming in contact with a broken metal strip or curbing binder, was not at fault in failing to observe the defect
“Let us therefore compare the facts in the cited cases with those here presented. *96 At the outset, it is to be observed that the accidents occurring to Miller, Mrs. Ansley and the plaintiff are similar in their nature, in that all of the injured persons tripped and fell over a defective sidewalk curbing. In reaching the conclusion in the Ansley case that the plaintiff was guilty of contributory negligence, we undertook to distinguish . the facts of that matter from those in the Miller case, which had been previously decided by this court. The difference between the two cases was declared to be — (1) that the accident to Mrs. Ansley happened in the daytime, whereas in the Miller case it occurred at night; (2) that the broken binder was bent upwards or towards the eye of Mrs. Ansley, whereas in the Miller case the binder was not so readily visible because it was bent down towards the street; and (3) that, since Mrs. Ansley was stepping up from the street upon the curbing, she should have exercised greater care to watch where she was stepping than was required of Miller who was stepping down from the curbing onto the street.
“It will be seen from the foregoing that the facts and circumstances presented in the Miller case are strikingly parallel to those in the matter now under consideration with the exception that, here, the accident occurred in the daytime, whereas, in the Miller case, it happened at night. But aside from the time of the occurrence, we find an additional circumstance in this matter which we believe justifies the conclusion that Mrs. Parker was not guilty of contributory fault, for she testified at the trial that the defect in the curbing was covered with leaves so that she could not, by casual glance or inspection, detect it.
“Contributory negligence is a special plea which imposes upon the defendant the burden of showing plaintiff’s fault by a preponderance of proof. Of course, in cases of this kind, it is practically impossible for the City to show, except from the plaintiff’s own testimony, that he or she did not exercise ordinary care and caution. And, in cases like the Ans-ley matter, where it appears obvious from the position of the hazard that the plaintiff should and could have been aware of it, recovery will be denied. Here, however, Mrs. Parker has explained that, due to the presence of the leaves, she did not see the defect. Her injury therefore was not attributable to her failure to exercise care but rather to her inability to discover the danger.”
The plaintiff states she did not have notice of the condition of the drainage area wherein she was injured. On cross examination, she testified, as follows:
“Q. Well, I’m really interested in your occasions to be in the parking lot and you did have many occasions to be in the parking lot ?
A. That’s correct.
Q. And you were well aware of the structure in the center of the parking lot from your — both from the the fact that you could see it out there when you were facing north from your apartment building and also from your occasions to ride in automobiles in that parking area?
A. That’s correct.
******
Q. Now, you knew before this night that there was a drainage ditch in the middle of that parking area, didn’t you ?
A. I knew there was a neutral ground, yes.
Q. As a matter of fact, you knew there was a drainage ditch?
A. I call it a drainage ditch, yes.
Q. Now, when you got to the drainage ditch, you stepped up on to the six inch curb there with your good foot?
A. Yes, sir.
*97 Q. And then you pulled up onto the the curb the weak left leg?
A. That’s correct.
Q. Now, at that time, did you know that you had to step down from the curb
* * *
A. No, sir.
Q. In taking your next step ?
A. Did I know that I had to step down in taking my next step?
Q. Yes.
A. Yes, I knew I had to step down.
Q. Now, did you know how far you had to step down in taking your next step from the curb?
A. No, sir.
Q. Why not?
A. It was dark. I couldn’t see.” (Emphasis ours)
The lower court was much impressed by the fact that the plaintiff had had polio as a child and had been told by her childhood doctor, Harry D. Morris of Charlotte, North Carolina, to be extra careful. Plaintiff testified:
“So, it scared me, because I had always been told that I had to be careful and not to break that leg, because if I did, I might never walk again on it.”
Regardless whether the plaintiff knew or should have known the defective condition, she did know that she had a serious condition that would require more than the care of the ordinary person in walking in an unknown area at night. The evidence does show that she could have walked around the parking lot, either to the western end or to the eastern end and kept on relatively level ground that would pose no serious danger to her. (See Exhibit P-11). She chose, however, to go over an unknown and uncertain route that contained a steep drop-off. From the portion of the plaintiff’s testimony that we have quoted above, we are not convinced that she has borne the burden of proof. She did not overcome the fact that she knew or should have known of the drop-off that she encountered and has not overcome the burden placed upon her to show that she had taken all necessary steps to prevent the occurrence from happening, such as using a flashlight or walking around the safe route.
We think the facts in the Brantley and Parker cases cited by the plaintiff can be distinguished from those in the case at bar. In both of those cases the defective condition where the plaintiff was injured was more or less a trap and could not be noticed by simple observation. The “Safer Route” doctrine did not apply.
In the case at bar, there was unquestionably a safe route open to the plaintiff, and despite her peculiar physical condition resulting from a case of childhood polio, she did not take any measures to prevent what happened to her. Plaintiff used an ingenious argument that she had used neutral ground in the parking lot to the north where she previously lived and that it was level and, therefore, she assumed that the neutral ground here was also level. She cited the Brantley and Parker cases in support of this position. In those particular cases, an apparently safe route was in fact dangerous. If plaintiff had used due care and had a flashlight when she left, she certainly could have seen that there was a steep drop-off and possibly would have walked around in safety. This was not done. Had the ground been level with grass growing over a hidden hole, or some other hidden defect, and plaintiff had fallen in it, then perhaps the cases of Brantley v. City of Baton Rouge, supra, or Parker v. City of New Orleans, supra, would have applied. However, it is our belief that the condition, if in fact dangerous to person, was one that was apparent to plaintiff and one she admittedly had seen in passing in an automobile before. Perhaps she was in a hurry and it had slipped her mind. In any event, *98 she did not use due care and did not use the safest route available to her under the facts presented in the record. See Hudgens v. City of New Orleans, La.App., 54 So.2d 536. We are not prepared to say that the lower court was in error.
For the reasons set forth above, the judgment of the lower court is affirmed.
Affirmed.